[This opinion has been published in *Ohio Official Reports* at 88 Ohio St.3d 430.]

THE STATE OF OHIO, APPELLANT, *v*. JONES, APPELLEE.

[Cite as *State v. Jones*, 2000-Ohio-374.]

*Criminal law—R.C. 2935.26—Issuance of citation for minor misdemeanor—Full custodial arrest for minor misdemeanor offense violates Fourth Amendment to United States Constitution and Section 14, Article I of the Ohio Constitution—Evidence obtained incident to such an arrest is subject to suppression.*

Absent one or more of the exceptions specified in R.C. 2935.26, a full custodial arrest for a minor misdemeanor offense violates the Fourth Amendment to the United States Constitution and Section 14, Article I of the Ohio Constitution, and evidence obtained incident to such an arrest is subject to suppression in accordance with the exclusionary rule.

(Nos. 99-613 and 99-769—Submitted January 25, 2000—Decided May 17, 2000.)

APPEAL from and CERTIFIED by the Court of Appeals for Montgomery County, No. CA17382.

_____

{¶ 1} On June 1, 1998, Dayton Police Officer William H. Swisher and his partner, Officer Rob Cleaver, were dispatched to the intersection of Delphos and Walton Avenues in Dayton, Ohio, in response to a report that two young black males were selling drugs in that area. The dispatcher provided the officers with the physical descriptions of the suspects.

{¶ 2} Upon arrival at the designated intersection, the officers saw a group of men standing together in front of a convenience store. Swisher, driving a marked police car, slowed the vehicle as it approached the men. When the men noticed the officers, they began to disperse.

**{¶ 3}** Two of the men matched the suspects' descriptions given by the dispatcher. One of the suspects, later identified as appellee, Kenon L. Jones, entered the convenience store. The other suspect ("suspect two") walked across Delphos Avenue. The officers stopped suspect two for, as described by one of the officers, "jaywalking." While they were talking with suspect two, appellee walked out of the convenience store and away from the officers.

**{¶ 4}** Cleaver put suspect two into the cruiser and the officers drove around the corner toward appellee, who was then walking in the street near the curb. When appellee saw the cruiser he stepped onto the sidewalk. Swisher stopped the cruiser, stepped out, and asked appellee to come over to the car. Appellee complied.

**{¶ 5}** When asked for identification, appellee replied that he did not have any. Swisher asked appellee to put his hands on top of the cruiser, so that Swisher could pat him down for weapons.[1] As he was patting appellee down, Swisher explained to appellee that by walking in the street appellee had committed the offense of jaywalking. When Swisher patted appellee's legs, appellee tightened the muscles in his legs and buttocks. Swisher told appellee to relax his muscles so he could complete the patdown. Again, when Swisher attempted to pat down appellee's legs, appellee tightened his leg muscles. Swisher then told appellee that he was under arrest for jaywalking. Appellee pushed himself away from the cruiser. Swisher grabbed him and they struggled with each other. With Cleaver's assistance, Swisher handcuffed appellee and put him in the back of the cruiser. When Swisher asked appellee why he was fighting the arrest, appellee indicated that he thought there was an outstanding warrant for his arrest.

---

1. During the hearing on the motion to suppress, Officer Swisher described the scope of a patdown search:

"Q: Officer, * * * briefly describe for the Court when you conduct a pat-down, is it more just a cursory touching of the outer clothing, or are you getting into specific parts of the clothing or body?

"A: The outer garment area. I pat down from the ankles up to the legs right underneath their groin on both sides and their waistband and chest and middle of the back area."

{¶ 6} Upon request, appellee told the officers his name, Social Security number, and date of birth. The officers verified through the computer system in their cruiser that the Social Security number corresponded to the name and date of birth given by appellee and that there was not an outstanding warrant for his arrest. Suspect two provided identification and was released. He was not issued a citation for jaywalking.

{¶ 7} The officers told appellee they were going to take him to jail and he would have to post bond on a jaywalking citation. While the officers were writing the citation, appellee was moving around in the back seat of the cruiser and continued to do so despite Swisher's order that he sit still. Upon Swisher's order, appellee stepped out of the cruiser to be patted down again. Once again when Swisher began to pat down appellee's legs, appellee tightened his leg muscles. Swisher searched the back seat of the cruiser and then ordered appellee to get back into the car.

{¶ 8} On the way to the city jail appellee continued to move around in the back seat. When Swisher heard what sounded to him like a cellophane wrapper, he pulled the cruiser over and again ordered appellee to step out. When appellee stepped out, Swisher again searched the back seat and found nothing.

{¶ 9} When they arrived at the city jail and appellee stepped out of the cruiser, Swisher noticed what he believed to be a piece of crack cocaine lying on top of the back seat where appellee had just been sitting. Appellee told the officers that it belonged to suspect two. The substance tested positive for crack cocaine.

{¶ 10} On June 9, 1998, appellee was indicted for a violation of R.C. 2925.11(A), possession of crack cocaine. Appellee moved to suppress the evidence of the crack cocaine, asserting that it was the fruit of an arrest made in violation of his rights guaranteed by the Fourth Amendment to the United States Constitution.

{¶ 11} After an oral hearing on the motion to suppress, the trial court found that the officers had probable cause to stop appellee and issue a citation for

jaywalking but held that the officers had violated R.C. 2935.26(A) when they placed appellee under arrest. R.C. 2935.26(A) prohibits officers from arresting violators of minor misdemeanor offenses except in certain limited circumstances. For this reason, the court sustained appellee's motion to suppress.

{¶ 12} Appellant, the state of Ohio, appealed the trial court's ruling, pursuant to R.C. 2945.67(A) and Crim.R. 12(J).[2] Appellant, conceding that appellee's arrest was made in violation of R.C. 2935.26, asserted, as its sole assignment of error, that "because the exclusionary rule applies only to constitutional violations and not to statutory violations, the trial court erred in suppressing the evidence."

{¶ 13} The court of appeals found appellant's assertion that the exclusionary rule will typically be applied only when police conduct is violative of constitutional rights to be a correct statement of the law. The court stated, however, that that rule of law "only begs the question of whether a violation of R.C. 2935.26 implicates any Fourth Amendment rights." Addressing that question, the court held that appellee's arrest was an unreasonable seizure under the Fourth Amendment to the United States Constitution and Section 14, Article I of the Ohio Constitution, and therefore the evidence discovered as a result of that arrest was subject to the exclusionary rule. Accordingly, the court of appeals affirmed the judgment of the trial court.

{¶ 14} Upon appellant's motion, the court of appeals certified that its decision was in conflict with the decisions of the First Appellate District in *State v.*

---

2. R.C. 2945.67(A) provides:
"A prosecuting attorney * * * may appeal as a matter of right any decision of a trial court in a criminal case * * * which decision grants * * * a motion to suppress evidence."
Crim.R. 12(J) provides:
"When the state takes an appeal as provided by law from an order suppressing or excluding evidence, the prosecuting attorney shall certify that: (1) the appeal is not taken for the purpose of delay; and (2) the ruling on the motion or motions has rendered the state's proof with respect to the pending charge so weak in its entirety that any reasonable possibility of effective prosecution has been destroyed."

4

*Holmes* (1985), 28 Ohio App.3d 12, 28 OBR 21, 501 N.E.2d 629; the Fourth Appellate District in *State v. Heideman* (June 23, 1988), Ross App. No. 1429, unreported, 1988 WL 69122; and the Sixth Appellate District in *State v. Wilkinson* (Sept. 30, 1986), Huron App. No. H-85-27, unreported, 1986 WL 11411. The cause is now before the court upon our determination that a conflict exists (case No. 99-769).

**{¶ 15}** The cause is also now before this court upon the allowance of a discretionary appeal (case No. 99-613).

———————————

*Mathias H. Heck, Jr.*, Montgomery County Prosecuting Attorney, and *Andrew T. French*, Assistant Prosecuting Attorney, for appellant.

*Arvin S. Miller,* Montgomery County Assistant Public Defender, for appellee.

———————————

**DOUGLAS, J.**

**{¶ 16}** The issue certified for our review is whether "an arrest in violation of R.C. 2935.26 constitute[s] an unreasonable seizure under the Fourth Amendment to the United States Constitution and Article I, Section 14 of the Ohio Constitution, thereby requiring suppression [in accordance with the exclusionary rule] of evidence seized as a consequence of the violation of that statute." For the reasons that follow, we answer the certified issue in the affirmative and affirm the judgment of the court of appeals.

**{¶ 17}** The Fourth Amendment to the United States Constitution, made applicable to the states through the Fourteenth Amendment, *Wolf v. Colorado* (1949), 338 U.S. 25, 69 S.Ct. 1359, 93 L.Ed. 1782, provides: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause * * *." Section 14, Article I of the Ohio Constitution

contains nearly identical language, and this court has determined that protections provided by Ohio's Constitution are coextensive with those provided by the United States Constitution. *State v. Robinette* (1997), 80 Ohio St.3d 234, 238, 685 N.E.2d 762, 766.

{¶ 18} Although the Fourth Amendment does not explicitly provide that violations of its provisions will result in suppression of evidence obtained as a result of the violation, the United States Supreme Court has held that the exclusion of that evidence is an essential part of the Fourth Amendment. *Weeks v. United States* (1914), 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652; *Mapp v. Ohio* (1961), 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081. This is known as the exclusionary rule. *Id.*

{¶ 19} The main purpose of the exclusionary rule is to remove the incentive to violate the Fourth Amendment and thereby deter police from performing future unconstitutional searches and seizures. *Wolf v. Colorado*, *supra*; *Elkins v. United States* (1960), 364 U.S. 206, 80 S.Ct. 1437, 4 L.Ed.2d 1669; *Terry v. Ohio* (1968), 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889. The Fourth Amendment exclusionary rule was made applicable to the states in *Mapp v. Ohio*, *supra*.

{¶ 20} In the case at bar, appellee was arrested for violating Section 75.02(A) of the Dayton Revised Code of General Ordinances ("jaywalking"), a minor misdemeanor.[3] In Ohio, arrests for minor misdemeanor offenses are governed by R.C. 2935.26, which provides:

"(A) Notwithstanding any other provision of the Revised Code, when a law enforcement officer is otherwise authorized to arrest a person for the commission

---

3. Section 75.02(A) of the Dayton Revised Code of General Ordinances provides:
"Where usable walks or paths parallel a street or highway, pedestrians shall not travel in, along, or on the vehicular traveled portion of such street or highway, except to cross the roadway in the manner provided by law."
Pursuant to Section 70.99 of the Dayton Revised Code of General Ordinances, a violation of Section 75.02(A) is a minor misdemeanor. Section 70.99 provides:
"Whoever violates any provision of this title, for which no penalty is otherwise provided in this section, is guilty of a minor misdemeanor on a first offense."

of a minor misdemeanor, the officer shall not arrest the person, but shall issue a citation, unless one of the following applies:

"(1) The offender requires medical care or is unable to provide for his own safety.

"(2) The offender cannot or will not offer satisfactory evidence of his identity.

"(3) The offender refuses to sign the citation.

"(4) The offender has previously been issued a citation for the commission of that misdemeanor and has failed to do one of the following:

"(a) Appear at the time and place stated in the citation;

"(b) Comply with division (C) of this section." (Division [C] provides means of pleading guilty and paying the fine without a court appearance.)

{¶ 21} Appellant concedes that none of the exceptions specified in R.C. 2935.26 was present in this case. In making this concession, appellant admits that Officer Swisher violated Ohio law when he arrested appellee. Nevertheless, appellant contends that the trial court and the court of appeals erred in suppressing the evidence obtained incident to appellee's arrest because police conduct violative of state law, but not violative of constitutional rights, does not trigger the exclusionary rule.

{¶ 22} Appellant's assertion that the exclusionary rule will not ordinarily be applied to evidence unless it was obtained through a violation of constitutional rights is a correct statement of the law as set forth in the court's decision in *Kettering v. Hollen* (1980), 64 Ohio St.2d 232, 18 O.O.3d 435, 416 N.E.2d 598. In *Hollen*, a municipal police officer arrested a suspect for a misdemeanor offense outside the officer's jurisdiction, in violation of Ohio law. *Id*. at 233-234, 18 O.O.3d at 436-437, 416 N.E.2d at 599-600. The court of appeals held that, because the arrest was unlawful, evidence obtained incident to the arrest should be suppressed. This court held that the officer *had probable cause to arrest* Hollen

7

and so, even though the arrest had violated Ohio law, it was not a violation of the Fourth Amendment. Finding no constitutional violation to trigger the exclusionary rule, the court reversed the court of appeals' decision to suppress the evidence. *Id.* at 235, 18 O.O.3d at 437-438, 416 N.E.2d at 600.

{¶ 23} Moreover, in a long line of cases, this court has consistently refused to apply the exclusionary rule to evidence obtained incident to police conduct violative of state law but not violative of constitutional rights. See, *e.g.*, *Hilliard v. Elfrink* (1996), 77 Ohio St.3d 155, 672 N.E.2d 166, and *State v. Myers* (1971), 26 Ohio St.2d 190, 55 O.O.2d 447, 271 N.E.2d 245 (exclusionary rule does not apply when officers, in violation of a statute, fail to advise an OMVI suspect that he could have his own blood-alcohol test performed); *State v. Downs* (1977), 51 Ohio St.2d 47, 5 O.O.3d 30, 364 N.E.2d 1140 (exclusionary rule does not apply when officers violate Crim.R. 41 with respect to the return of a search warrant); *State v. Davis* (1978), 56 Ohio St.2d 51, 10 O.O.3d 87, 381 N.E.2d 641 (exclusionary rule does not apply when fingerprint evidence is obtained in violation of a statute).[4]

{¶ 24} However, as the court of appeals correctly pointed out, the rule of law set forth above only begs the question of whether a violation of R.C. 2935.26 has constitutional implications. Appellee urges us to hold that, unlike the statutory violations in the above-referenced cases, an arrest for a minor misdemeanor, made in violation of R.C. 2935.26, is a constitutional violation as well as a statutory violation. Appellant, on the other hand, contends that a violation of R.C. 2935.26 does not have constitutional significance and claims that this court acknowledged as much in *State v. Slatter* (1981), 66 Ohio St.2d 452, 20 O.O.3d 383, 423 N.E.2d 100.

---

4. The court made clear in *Davis* that there was no constitutional violation because Davis had waived his Fourth Amendment rights by consenting to being fingerprinted and, thus, the violation was purely statutory. *Davis*, 56 Ohio St.2d at 57, 10 O.O.3d at 90, 381 N.E.2d at 646.

**{¶ 25}** The facts in *Slatter* were similar to those of the instant matter. Police officers arrested Slatter for the commission of a minor misdemeanor offense. Finding that none of the exceptions in R.C. 2935.26 had been met, the trial court suppressed the evidence obtained incident to the unlawful arrest.

**{¶ 26}** Whereas the facts of *Slatter* were similar to the case at bar, the issue presented to this court was quite different. In *Slatter*, the state argued that R.C 2935.26 was unconstitutional because it intruded upon the court's rule-making powers under Section 5(B), Article IV of the Ohio Constitution. We found that the statute's provisions were not in conflict with the Ohio Rules of Criminal Procedure and rejected the state's argument. *Id*. at 458, 20 O.O.3d at 387, 423 N.E.2d at 104. The issue in the case now before us, whether an arrest in violation of R.C. 2935.26 is also a constitutional violation, was not raised in *Slatter*. Therefore, though some of the language in *Slatter* may imply that R.C. 2935.26 does not have constitutional implications, we do not find that language controlling here.[5]

**{¶ 27}** Having determined that *Slatter* does not decide the issue in the instant case, we now turn our attention to appellee's contention that an arrest for a minor misdemeanor, made in violation of R.C. 2935.26, is a violation of the Fourth Amendment. In this regard, appellee argues that such an arrest is an unreasonable seizure.

**{¶ 28}** In determining whether a particular governmental action violates the reasonableness requirement of the Fourth Amendment, the United States Supreme Court first examines whether the action was regarded as unlawful when the Amendment was enacted.[6] *Wyoming v. Houghton* (1999), 526 U.S. 295, ___, 119

---

5. In *Slatter* we stated that R.C. 2935.26 "created" a right of freedom from arrest for one accused of the commission of a minor misdemeanor " 'where no such right existed before.' " *Slatter*, 66 Ohio St.2d at 458, 20 O.O.3d at 387, 423 N.E.2d at 104.

6. We note that although the United States Supreme Court looks to what was acceptable at the time the Fourth Amendment was enacted, it has also cautioned that "[t]he significance accorded to [the common law], * * * must be kept in perspective, for our decisions in this area have not 'simply frozen into constitutional law those enforcement practices that existed at the time of the Fourth

S.Ct. 1297, 1300, 143 L.Ed.2d 408, 414. If, however, at the time of the Fourth Amendment's ratification there was no clear practice either allowing or forbidding the type of governmental action at issue, then its reasonableness is judged by weighing the competing interests involved. That is, the extent of the action's intrusion on the individual's liberty and privacy is weighed against the need for the intrusion to promote legitimate governmental interests ("balancing test"). *Vernonia School District 47J v. Acton* (1995), 515 U.S. 646, 652-653, 115 S.Ct. 2386, 2390, 132 L.Ed.2d 564, 574; *Wyoming v. Houghton*, 526 U.S. at ___, 119 S.Ct. at 1300, 143 L.Ed.2d at 414.

{¶ 29} The governmental action at issue in the case at bar is a full custodial arrest. The first prong of the reasonableness test requires that we determine, if possible, whether officers were permitted to arrest persons at common law for minor misdemeanor offenses. Because the term "minor misdemeanor" was not used at common law and because many modern statutory offenses do not have common-law predecessors, *Blanton v. North Las Vegas, Nevada* (1989), 489 U.S. 538, 541, 109 S.Ct. 1289, 1292, 103 L.Ed.2d 550, 555, fn. 5, we cannot determine whether at common law there was a clear practice either allowing or forbidding arrests for offenses that are today classified as minor misdemeanors. Nevertheless, we will discuss the types of offenses for which officers were permitted to arrest at common law and compare those to offenses classified as minor misdemeanors today.

---

Amendment's passage.' *Payton v. New York*, 445 U.S. at 591 [100 S.Ct. at 1382-1383, 63 L.Ed.2d at 654], n. 33. The common-law rules governing searches and arrests evolved in a society far simpler than ours is today. Crime has changed, as have the means of law enforcement, and it would therefore be naive to assume that those actions a constable could take in an English or American village three centuries ago should necessarily govern what we, as a society, now regard as proper. Cf. *Katz v. United States*, 389 U.S. 347, 352-353 [88 S.Ct. 507, 511-512, 19 L.Ed.2d 576, 582-583] (1967). Instead, the Amendment's prohibition against 'unreasonable searches and seizures' must be interpreted 'in light of contemporary norms and conditions.' *Payton v. New York*, *supra*, at 591, [100 S.Ct. at 1382-1383, 63 L.Ed.2d at 654], n. 33." *Steagald v. United States* (1981), 451 U.S. 204, 217, 101 S.Ct. 1642, 1650, 68 L.Ed.2d 38, 48, fn. 10.

**{¶ 30}** At common law, criminal offenses were classified into three categories: treason, felonies, and misdemeanors. 1 LaFave & Scott, Substantive Criminal Law (1986) 41, Section 1.6, fn. 1. Only crimes punishable by a total forfeiture of the offender's lands and/or goods were considered felonies. *Kurtz v. Moffitt* (1885), 115 U.S. 487, 499, 6 S.Ct. 148, 152, 29 L.Ed. 458, 460. Many crimes that are classified as felonies under federal or state law today were classified as misdemeanors at common law, *e.g*., assault with intent to rob, murder, or rape, false imprisonment, kidnapping, and forcible and violent entry. *United States v. Watson* (1976), 423 U.S. 411, 439-440, 96 S.Ct. 820, 835-836, 46 L.Ed.2d 598, 618 (Marshall, J., dissenting).

**{¶ 31}** Officers were permitted to arrest without a warrant at common law only for offenses classified as felonies and for misdemeanors constituting a breach of the peace committed in the officer's presence. *Carroll v. United States* (1925), 267 U.S. 132, 156-157, 45 S.Ct. 280, 286, 69 L.Ed. 543, 553. Breaches of the peace at common law were offenses involving conduct that destroyed or menaced public order and tranquility such as "violent acts * * * and words likely to produce violence in others." *Cantwell v. Connecticut* (1940), 310 U.S. 296, 308, 60 S.Ct. 900, 905, 84 L.Ed. 1213, 1220.

**{¶ 32}** We believe that the offenses classified as minor misdemeanors today would not have been considered breaches of the peace at common law because offenses classified as minor misdemeanors are those offenses that society considers to be the least serious. Indeed, the maximum penalty for committing a minor misdemeanor offense is a $100 fine. Crim.R. 4.1(B); R.C. 2901.02(G). Thus, it seems unlikely that officers at common law would have been permitted to arrest, at least without a warrant, persons committing offenses that today are classified as minor misdemeanors. Nevertheless, because we are unable to say that there was a clear practice forbidding such arrests, we now turn to the balancing test to

determine whether an arrest for a minor misdemeanor, in violation of R.C. 2935.26, is reasonable.

{¶ 33} As mentioned above, the balancing test requires that we weigh the competing interests surrounding the governmental action at issue. That is, we must evaluate on the one hand the degree to which the governmental action intrudes upon a person's liberty and privacy, and, on the other hand, the degree to which the intrusion is necessary for the promotion of legitimate governmental interests. *Wyoming v. Houghton*, 526 U.S. at ___, 119 S.Ct. at 1300, 143 L.Ed.2d at 414.

{¶ 34} As previously indicated, the governmental action at issue in this case is a full custodial arrest. An arrest is a "serious personal intrusion." *United States v. Watson*, *supra*, at 428, 96 S.Ct. at 830, 46 L.Ed.2d at 612 (Powell, J., concurring). When arrested, a person is often handcuffed and is forcibly taken to an unfamiliar place. While under arrest, the person is forced to forfeit control of his person and his movements. *Id*. at 446, 96 S.Ct. at 839, 46 L.Ed.2d at 622 (Marshall, J., dissenting). In this manner, the arrested person's freedom, which is "the very essence of constitutional liberty," *Gouled v. United States* (1921), 255 U.S. 298, 304, 41 S.Ct. 261, 263, 65 L.Ed. 647, 650, is severely limited.

{¶ 35} In addition to the constraints on liberty, once placed under arrest a person is subjected to numerous invasions of his or her privacy. Officers may perform a full search of an arrestee's person regardless of the offense prompting the arrest. *United States v. Robinson* (1973), 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427; *Gustafson v. Florida* (1973), 414 U.S. 260, 94 S.Ct. 488, 38 L.Ed.2d 456. Describing the intrusion occasioned by a patdown, which is less thorough than a full search, the United States Supreme Court stated that "[e]ven a limited search of the outer clothing * * * constitutes a severe * * * intrusion upon cherished personal security, and it must surely be an annoying, frightening, and perhaps humiliating experience." *Terry v. Ohio*, *supra*, 392 U.S. at 24-25, 88 S.Ct. at 1881-

1882, 20 L.Ed.2d at 908. Clearly, the intrusion is magnified when the person is subjected to a full search.

{¶ 36} Against the weight of an arrest's intrusion upon a person's liberty and privacy, we must weigh the government's interests in making an arrest for a minor misdemeanor when none of the exceptions in R.C. 2935.26 is present. The government's interests in making arrests are enforcing the laws and protecting the public. An offense classified as a minor misdemeanor is, by definition, one for which the maximum penalty is a fine of $100. Crim.R. 4.1(B); R.C. 2901.02(G). That is, even if the offender is found guilty beyond a reasonable doubt of committing the offense, he will not be incarcerated. By subjecting violators of minor misdemeanor offenses only to small fines, the legislature has identified the extent of intrusion that it feels is necessary to enforce those laws.[7]

{¶ 37} Consequently, it is not necessary for an officer to arrest an offender for committing a minor misdemeanor offense unless he has reason to believe that the offender will not respond to the summons or pay the fine. R.C. 2935.26 protects an officer's interest, and the interest of the public, in making arrests in those situations by allowing officers to arrest the offenders that are least likely to respond or pay, *i.e.*, offenders who fail to provide adequate identification, offenders who

---

7. Following is a list of some offenses that are classified as minor misdemeanors by the Ohio Revised Code. This list is intended merely to illustrate the types of offenses classified as minor misdemeanors and is by no means exhaustive. A pedestrian crossing a street, between intersections, in a place other than a marked crosswalk (R.C. 4511.48[C]), walking in the left-hand side of a crosswalk (R.C. 4511.49), walking upon the roadway when a useable sidewalk is provided (R.C. 4511.50[A]), riding a bicycle with a seat that is not firmly attached or with handle bars that are more than fifteen inches higher than the seat (R.C. 4511.53), and riding a bicycle that is not equipped with a bell or other sounding device giving a signal audible for a distance of at least one hundred feet (R.C. 4511.56[B]). The following minor misdemeanor offenses are committed while operating a motor vehicle: failing to signal at least one hundred feet before turning or making a lane change (R.C. 4511.39), failing to stop the engine, remove the key, and engage the parking brake when parking and leaving the vehicle unattended (R.C. 4511.661), and parking the vehicle with its right side wheels further than twelve inches from the curb (R.C. 4511.69).

We note that the classification of each of the offenses listed above is increased from a minor misdemeanor to a misdemeanor of the fourth degree if the offender is a repeat offender. R.C. 4511.99(D)(1)(b).

refuse to sign the citation, and offenders who failed, in the past, to pay a fine assessed against the offender for a previous commission of the same misdemeanor offense. Thus, effective law enforcement is not impaired by refusing to allow officers to arrest individuals for minor misdemeanor offenses when none of the exceptions set forth in R.C. 2935.26 applies.

{¶ 38} Clearly, the government's interests in making a full custodial arrest for a minor misdemeanor offense, absent any R.C. 2935.26 exceptions, are minimal and are outweighed by the serious intrusion upon a person's liberty and privacy that, necessarily, arises out of an arrest. Accordingly, we find that a full custodial arrest for a minor misdemeanor, when none of the exceptions set forth in R.C. 2935.26 exists, is an unreasonable seizure under the Fourth Amendment.

{¶ 39} The United States Supreme Court has not addressed the issue of whether a full custodial arrest for a minor offense is, in some circumstances, an unreasonable seizure. However, Justice Stewart suggested that it was an unreasonable seizure in his concurring opinion in *Gustafson v. Florida*, *supra*, 414 U.S. at 266, 94 S.Ct. at 492, 38 L.Ed.2d at 462. In *Gustafson*, a police officer arrested Gustafson for failure to have his driver's license in his possession while driving. While searching Gustafson incident to that arrest, the officer discovered marijuana cigarettes.

{¶ 40} The court rejected Gustafson's argument that a full-scale body search incident to an arrest for a traffic violation violated the Fourth Amendment. Gustafson did not argue that the *arrest* itself was unconstitutional. In his concurring opinion, Justice Stewart stated that "a persuasive claim might have been made * * * that the custodial arrest of the petitioner for a minor traffic offense violated his rights under the Fourth and Fourteenth Amendments." *Id.* at 266-267, 94 S.Ct. at 492, 38 L.Ed.2d at 462. This statement clearly adds support to our decision in the instant case.

**{¶ 41}** For the foregoing reasons, we hold that absent one or more of the exceptions specified in R.C. 2935.26, a full custodial arrest for a minor misdemeanor offense violates the Fourth Amendment to the United States Constitution and Section 14, Article I of the Ohio Constitution, and evidence obtained incident to such an arrest is subject to suppression in accordance with the exclusionary rule. Therefore, the court of appeals did not err in affirming the trial court's judgment to suppress the evidence obtained incident to appellee's arrest. Accordingly, we affirm the judgment of the court of appeals.

*Judgment affirmed.*

MOYER, C.J., RESNICK, F.E. SWEENEY, PFEIFER, COOK and LUNDBERG STRATTON, JJ., concur.

_____