[Cite as *State v. Hundley*, 2009-Ohio-6873.]

IN THE COURT OF APPEALS OF OHIO
THIRD APPELLATE DISTRICT
VAN WERT COUNTY

STATE OF OHIO,

     PLAINTIFF-APPELLEE,           CASE NO.  15-09-10

     v.

KATIE J. HUNDLEY,              O P I N I O N

     DEFENDANT-APPELLANT.

STATE OF OHIO,

     PLAINTIFF-APPELLEE,           CASE NO.  15-09-12

     v.

KATIE J. HUNDLEY,              O P I N I O N

     DEFENDANT-APPELLANT.

Appeal from Van Wert County Municipal Court
Trial Court Nos. CRB 0900135 and TRC 0900451

Judgments Affirmed

Date of Decision:    December 28, 2009

APPEARANCES:

     *Shaun A. Putman* for Appellant

     *Timothy R. Pieper*  for Appellee

**ROGERS, J.**

{¶1} Defendant-Appellant, Katie Hundley, appeals the judgments of the Van Wert Municipal Court of Van Wert County denying her motion to suppress evidence regarding charges of operating a vehicle after underage consumption of alcohol and consuming intoxicating liquor or beer while under the age of twenty-one in cases 15-09-12 and 15-09-10, respectively. On appeal, Hundley asserts that the trial court erred by failing to suppress evidence because there was not sufficient, competent, and credible evidence giving rise to probable cause to support an investigatory stop of her vehicle. Based on the following, we affirm the judgments of the trial court.

{¶2} In February 2009, in case 15-09-12[1], Hundley was arrested and cited for one count of operating a vehicle after underage consumption of alcohol in violation of R.C. 4511.19(B)(3), a misdemeanor of the fourth degree, and one count of failure to illuminate a rear license plate in violation of R.C. 4513.05, a minor misdemeanor. Additionally, in case 15-09-10[2], Hundley was charged via affidavit with consuming intoxicating liquor or beer while under the age of twenty-one in violation of R.C. 4301.69(E)(1), a misdemeanor of the first degree. The citation and charge stemmed from an incident during which a state trooper

---

[1] Case 15-09-12 corresponds to Van Wert Municipal Court of Van Wert County case 0900451(R.C. 4511.19(B)(3)) and case 0900452 (R.C. 4513.05).
[2] Case 15-09-10 corresponds to Van Wert Municipal Court of Wan Wert County case 0900135.

stopped Hundley for an equipment violation, administered field-sobriety tests, and subsequently arrested her for underage consumption of alcohol. Subsequently, in case 15-09-12, Hundley entered pleas of not guilty to operating a vehicle after underage consumption of alcohol and failure to illuminate a rear license plate. Additionally, in case 15-09-10, Hundley entered a plea of not guilty to consuming intoxicating liquor or beer while under the age of twenty-one.

{¶3} In April 2009, in cases 15-09-10 and 15-09-12, Hundley moved to suppress the evidence obtained during the traffic stop on the basis that the state trooper lacked reasonable articulable suspicion required to stop her for investigatory purposes.

{¶4} In June 2009, the trial court held a hearing on the motion to suppress, at which the following testimony was heard.

{¶5} Trooper Shaun Cook of the Ohio State Highway Patrol testified that, on February 20, 2009, he was traveling on Middlepoint-Wetzel Road in Van Wert County when he observed the vehicle in front of him turn and observed that the rear license plate was not illuminated; that he was able to tell the plate was not illuminated because, when the vehicle turned, his headlights were not shining on the rear of the vehicle and the portion of the roadway was not lit; that he was approximately one and one-half car lengths behind the vehicle; that he initiated a traffic stop of the vehicle and identified Hundley as the driver; that he informed

Hundley that he stopped her vehicle because of the license plate light; that, after he stopped the vehicle, he did not further investigate whether the license plate was lit; and, that he observed that Hundley's eyes were bloodshot and glassy and that there was an alcoholic beverage in the vehicle.

{¶6} Trooper Cook further testified that, during portions of the video of the stop, the license plate on Hundley's vehicle was illuminated, however the plate was illuminated not by a license plate light, but by the headlights on his vehicle and the bright white "take down" lights on his vehicle's overhead light bar (suppression hearing tr., p. 20); that he could tell the plate was not illuminated by a license plate light because it would have been hanging from where it was mounted on the rear of the vehicle; that he did not inspect the vehicle to see if a light was hanging above the plate for officer safety reasons; that, even though both he and Hundley had walked in front of his vehicle, temporarily blocking the headlights on his vehicle, her license plate light remained illuminated; that her license plate light remained illuminated despite the blockage of his headlights due to the lights on the overhead light bar of his vehicle; that the license plate appeared more illuminated than the bumper of Hundley's vehicle because license plates are made of reflective material; that, after Hundley and a passenger in the vehicle were secured in the back of his patrol vehicle, he turned Hundley's vehicle around and parked it; that Hundley's license plate appeared illuminated during the one hundred eighty

degree turn, but that he believed the light source was from the overhead light bar on his vehicle and his headlights; and, that his audio recording device was not working during the stop, so there was no proof other than his own testimony that he talked to Hundley about her license plate light.

{¶7} After the close of testimony, the trial court overruled Hundley's motion to suppress, finding that "the officer had probable cause to stop the Defendant."[3] (Suppression Hearing Tr., p. 44). Thereafter, Hundley withdrew her not guilty pleas to all counts in cases 15-09-10 and 15-09-12, and entered pleas of no contest to all counts. The trial court accepted Hundley's pleas and found her guilty of all counts. On her conviction for operating a vehicle after underage consumption of alcohol in violation of R.C. 4511.19(B)(3), the trial court sentenced Hundley to a thirty-day jail term with twenty days suspended and ten days deferred pending her completion of a driver's intervention program, imposed two years of probation[4], and imposed a nine-month license suspension. On her conviction for consuming intoxicating liquor or beer while under the age of

_____

[3] We note that, although the trial court found that Trooper Cook was able to initiate the stop based on the heightened standard of probable cause, all that is needed to commence an investigatory stop of a vehicle is reasonable articulable suspicion. See *Delaware v. Prouse* (1979), 440 U.S. 648; *Terry v. Ohio* (1968), 392 U.S. 1.

[4] We note that the trial court referred to "probation" in both the journal entries of sentence, although R.C. 2929.25, effective January 1, 2004, provides that courts may impose "community control" and not "probation" on misdemeanor offenders. However, the trial court's misnomer does not change our result in this case.

twenty-one in violation of R.C. 4301.69(E)(1), the trial court sentenced Hundley to a thirty-day jail term, with twenty days suspended and eight days deferred pending her completion of twenty-four hours of community service, and imposed two years of probation. On her conviction for failing to illuminate a rear license plate in violation of R.C. 4513.05, the trial court ordered Hundley to pay a $10 fine.

{¶8} It is from the trial court's denial of her motion to suppress in cases 15-09-10 and 15-09-12 that Hundley appeals, presenting the following assignment of error for our review.

**THE TRIAL COURT WHEN IN DENYING [SIC] APPELLANT'S MOTION TO SUPPRESS WHERE THERE WAS NO COMPETENT CREDIBLE EVIDENCE TO SUPPORT A VIOLATION OF R.C. 4513.05(A), THUS GIVING NO RISE TO PERFORM AN INVESTIGATORY STOP OF APPELLANT'S VEHICLE.**

{¶9} In her sole assignment of error, Hundley argues that the trial court should not have overruled her motion to suppress because no competent, credible evidence existed to support a violation of R.C. 4513.05; and, thus, that Trooper Cook had no reasonable articulable suspicion to conduct an investigatory stop of her vehicle. Specifically, Hundley contends that the videotape of the traffic stop demonstrated that, when both Hundley and Trooper Cook passed between her vehicle and the patrol vehicle, a shadow appeared on the bumper because the light source (the headlights on the patrol vehicle) was impeded, but that the license

plate remained fully illuminated with no shadow or dimming, indicating another light source illuminated the plate, such as a functional plate light; that, when Trooper Cook turned Hundley's vehicle around, the license plate remained illuminated up to the point that it was no longer visible; and, that Trooper Cook admitted that he did not investigate the functionality of the license plate light after initiating the traffic stop. We disagree that Trooper Cook had no reasonable articulable suspicion to conduct an investigatory stop of Hundley's vehicle.

{¶10} "Appellate review of a decision on a motion to suppress evidence presents mixed questions of law and fact." *State v. Dudli*, 3d Dist. No. 3-05-13, 2006-Ohio-601, ¶12, citing *United States v. Martinez* (C.A.11, 1992), 949 F.2d 1117. The trial court serves as the trier of fact and is the primary judge of the credibility of the witnesses and the weight to be given to the evidence presented. *State v. Johnson* (2000), 137 Ohio App.3d 847, 850. Therefore, when an appellate court reviews a trial court's ruling on a motion to suppress, it must accept the trial court's findings of facts so long as they are supported by competent, credible evidence. *State v. Roberts*, 110 Ohio St.3d 71, 2006-Ohio-3665, ¶100, citing *State v. Fanning* (1982), 1 Ohio St.3d 19, 20. The appellate court must then review the application of the law to the facts de novo. *Roberts*, supra, citing *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶8.

{¶11} The Fourth Amendment to the United States Constitution and Section 14, Article I of the Ohio Constitution prohibit unreasonable searches and seizures. Neither the Fourth Amendment to the United States Constitution nor Section 14, Article I of the Ohio Constitution explicitly provides that violations of its provisions against unlawful searches and seizures will result in the suppression of evidence obtained as a result of such violation, but the United States Supreme Court has held that the exclusion of evidence is an essential part of the Fourth Amendment. *Mapp v. Ohio* (1961), 367 U.S. 643, 649; *Weeks v. United States* (1914), 232 U.S. 383, 394. The primary purpose of the exclusionary rule is to remove the incentive to violate the Fourth Amendment and thereby deter police from unlawful conduct. *State v. Jones*, 88 Ohio St.3d 430, 434, 2000-Ohio-374, overruled by *State v. Brown*, 99 Ohio St.3d 323, 2003-Ohio-3931.

{¶12} At a suppression hearing, the State bears the burden of establishing that a warrantless search and seizure falls within one of the exceptions to the warrant requirement, *Xenia v. Wallace* (1988), 37 Ohio St.3d 216, paragraph two of the syllabus; *State v. Kessler* (1978), 53 Ohio St.2d 204, 207, and that it meets Fourth Amendment standards of reasonableness. *Maumee v. Weisner*, 87 Ohio St.3d 295, 297, 1999-Ohio-68, citing 5 LaFave, Search and Seizure (3 Ed.1996), Section 11.2(b).

{¶13} When a law enforcement officer accosts an individual and restricts his freedom of movement, the Fourth Amendment is implicated. *State v. Stephenson*, 3d Dist. No. 14-04-08, 2004-Ohio-5102, ¶16, citing *Terry*, supra. Generally, in order for a law enforcement officer to conduct a warrantless search, he must possess probable cause, which means that "'there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" *State v. Carlson* (1995), 102 Ohio App.3d 585, 600, quoting *Illinois v. Gates* (1983), 462 U.S. 213, 214. However, even where probable cause is lacking, it is well-established that a law enforcement officer may temporarily detain an individual where he has a reasonable articulable suspicion that the individual is engaging in criminal activity. *State v. Bobo* (1988), 37 Ohio St.3d 177, 179, citing *Terry*, 392 U.S. at 21. Such detention may be referred to as investigatory detention or a "Terry" stop.

{¶14} Reasonable articulable suspicion is "'specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the intrusion.'" *Stephenson*, 2004-Ohio-5102, at ¶16, quoting *Bobo*, 37 Ohio St.3d at 178. In forming reasonable articulable suspicion, law enforcement officers may "draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that 'might

well elude an untrained person.'" *United States v. Arvizu* (2002), 534 U.S. 266, 273, quoting *United States v. Cortez* (1981), 449 U.S. 411, 417-418.

**{¶15}** Further, an officer who witnesses a traffic violation possesses probable cause, and a reasonable articulable suspicion, to conduct a traffic stop. Id. "'However, once the stop is made, its scope must be tailored to its justification and the seizure of the driver must last no longer than reasonably necessary to effect its purpose.'" Id., quoting *Kazazi*, 2004-Ohio-4147, at ¶9. Nevertheless, the officer may prolong the stop if he gathers further information during the stop that gives rise to an independent reasonable articulable suspicion that other offenses may have been committed or are being committed. Id., citing *Kazazi*, 2004-Ohio-4147, at ¶9, citing *State v. Robinette* (1997), 80 Ohio St.3d 234, 240. The stop may continue for as long as the new reasonable articulable suspicion persists. *State v. Venham* (1994), 96 Ohio App.3d 649, 655; *Robinette*, 80 Ohio St.3d at 241.

**{¶16}** Trooper Cook initiated a stop of Hundley's vehicle on the basis of a violation of R.C. 4513.05(A), which governs illumination of rear license plates and provides, in pertinent part:

> **Either a tail light or a separate light shall be so constructed and placed as to illuminate with a white light the rear registration plate, when such registration plate is required, and render it legible from a distance of fifty feet to the rear. Any tail light, together with any separate light for illuminating the rear registration plate, shall be so wired as to be lighted whenever the**

**headlights or auxiliary driving lights are lighted, except where separate lighting systems are provided for trailers for the purpose of illuminating such registration plate.**

{¶17} Hundley argues that no competent, credible evidence existed to support a violation of R.C. 4513.05; and, thus, that Trooper Cook had no reasonable articulable suspicion to conduct an investigatory stop of her vehicle. Specifically, Hundley contends that the videotape of the traffic stop demonstrated that her license plate remained illuminated during the entire stop, and argues that Trooper Cook admitted that he did not investigate the functionality of the license plate light after initiating the traffic stop. Additionally, Hundley argues that her case is analogous to *State v. Phillips*, 3d Dist. No. 8-04-25, 2006-Ohio-6338, overruled in part by *State v. Mays*, 119 Ohio St.3d 406, 2008-Ohio-4539, in which this Court found reasonable articulable suspicion was not present to justify a traffic stop.

{¶18} In *Phillips*, supra, the trial court granted a driver's motion to suppress evidence, finding that no probable cause or reasonable articulable suspicion existed to support a trooper's stop of a driver where the trooper testified that the defendant had crossed the white edge line and that the defendant's license plate was not illuminated. On appeal, this Court affirmed the trial court's decision, finding that it was supported by competent, credible evidence. In *Phillips*, the trooper did not cite the defendant for violating R.C. 4513.05(A); the

trooper did not inform the defendant prior to his arrest that he was stopped for violating R.C. 4513.05(A); the defendant introduced evidence that the license plate light was in working condition the day after the stop; and, the trial court apparently found the defendant's version of events to be more credible. Contrastingly, here, Trooper Cook cited Hundley for violating R.C. 4513.05(A) and informed Hundley that he stopped her for the license plate light violation; Hundley introduced no evidence demonstrating that the license plate light was in working condition; and, the trial court apparently found Trooper Cook's version of events to be more credible. Accordingly, we find the case sub judice to be distinguished from *Phillips*, supra.

{¶19} Additionally, Trooper Cook testified that, when Hundley turned in front of him, the rear license plate of her vehicle was not illuminated because his headlights were no longer shining on it; that her license plate was illuminated during the videotape of the stop, but that this was due to the headlights on his vehicle as well as the lights on his vehicle's overhead light bar; and, that the license plate appeared more illuminated than the bumper on Hundley's vehicle because license plates are made of reflective material. Accordingly, we find that competent, credible evidence supported the trial court's finding that Trooper Cook had probable cause, let alone reasonable articulable suspicion, to stop Hundley's vehicle. This is particularly so given that the trial court is in the best position to

weigh witness credibility, as it is "best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *In re Jane Doe I* (1991), 57 Ohio St.3d 135, 138; *Seasons Coal Co. v. Cleveland* (1984), 10 Ohio St.3d 77, 80.

{¶20} Having found no error prejudicial to the appellant herein, in the particulars assigned and argued, we affirm the judgments of the trial court.

*Judgments Affirmed*

**PRESTON, P.J. and SHAW, J., concur.**

**/jlr**