[Cite as *State v. Jenkins*, 2010-Ohio-5943.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## UNION COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,                 CASE NO. 14-10-10

    v.

ANTHONY K. JENKINS, II,             **O P I N I O N**

    DEFENDANT-APPELLANT.

---

**Appeal from Marysville Municipal Court**
**Trial Court No. TRD 1000687**

**Judgment Affirmed**

**Date of Decision: December 6, 2010**

---

APPEARANCES:

    *Jeffery A. Linn, II* **for Appellant**

    *Anthony W. Eufinger* **for Appellee**

**ROGERS, J.**

{¶1} Defendant-Appellant, Anthony K. Jenkins, II, appeals the judgment of the Marysville Municipal Court convicting him of driving while under suspension pursuant to R.C. 4510.14. On appeal, Jenkins argues that the trial court erred in overruling his motion to suppress, claiming that the police officer lacked probable cause to justify the stop of his vehicle. Finding that the police officer had a reasonable articulable suspicion that Jenkins was driving under a suspended license and was not within his limited driving privileges, we affirm the judgment of the trial court.

{¶2} In February 2010, Jenkins was cited for one count of driving while under suspension for operating a vehicle while under the influence of alcohol (hereinafter "OVI") in violation of R.C. 4510.11(A). The citation specified that the "suspension type" was "OVI." Thereafter, Jenkins entered a plea of not guilty.

{¶3} In April 2010, Jenkins filed a motion to suppress all evidence related to the traffic stop on the basis that the police officer did not have reasonable articulable suspicion to justify the traffic stop. Thereafter, a hearing was held on the motion to suppress, at which the following testimony was heard.

{¶4} Officer Robert Bartholomew of the City of Marysville Police Department testified that, on Sunday, February 21, 2010, at approximately 6:18 p.m., he was stationed in his patrol cruiser on Watkins Road in Marysville, Union

County; that he observed a northbound vehicle approaching him on Watkins Road; that his visual estimation of the vehicle's speed was forty-five m.p.h.; that the speed limit on that stretch of the road was thirty-five m.p.h.; that he did not check the speed using radar; that he entered the license plate into his LEADS system and observed that the owner of the vehicle had a suspended license; that he pulled onto Watkins Road behind the vehicle, and confirmed the suspended license status with the dispatcher; that the dispatcher also informed him that there were limited driving privileges associated with the suspended license, but did not explain the times or dates of the limitations; that the vehicle entered State Route 33, and he followed the vehicle, drove side-by-side with the vehicle, and observed that the driver, Jenkins, matched the physical description of the owner relayed to him by the dispatcher; that there was also a passenger in the vehicle; that, due to the circumstances, he believed Jenkins was not driving within his privileges; that he initiated a stop of the vehicle; that he asked Jenkins where he was going, and Jenkins replied that he was going to the movies and that this was not covered by his limited driving privileges; that, prior to the stop, he did not know where Jenkins' place of employment was or what his hours of employment were; that he did not observe Jenkins leaving any place unlikely to be permitted by limited driving privileges, such as a bar; that he did not include the fact that it was the weekend as a factor causing him to make the stop in his report; that he knew

Jenkins' address from the LEADS report, and determined that he was traveling away from his residence; that he stopped Jenkins approximately one or two miles away from where he first observed Jenkins' vehicle; and, that it would not have been prudent for him to pull Jenkins over before he did because there was not a safe area to stop until they were on State Route 33, and because he could not identify the driver as the owner of the vehicle until they were both travelling on State Route 33.

{¶5} At the close of evidence, the trial court denied Jenkins' motion to suppress, stating from the bench that the police officer had reasonable articulable suspicion to stop the vehicle based on the observed speeding violation as well as the information regarding Jenkins' license suspension. Thereafter, Jenkins withdrew his plea of not guilty and entered a plea of no contest to driving while under OVI suspension pursuant to R.C. 4510.14.[1] The trial court then found Jenkins guilty and sentenced him to a thirty-day jail term, with twenty-seven days suspended on the condition of successful completion of three years of probation, and ordered him to pay a $600 fine, with $300 deferred on the condition of successful completion of three years of probation.

---

[1] We note that the Judgment Entry provided that "this cause came on for hearing/trial upon the charge of violation of R.C./Ord.# 4510.45 entitled SUSP/REV OVI" (Apr. 2010 Judgment Entry, p. 1). However, the trial court's citation to R.C. 4510.45 appears to be a typographical error, as this code section regards certification of immobilizing and disabling devices.

*Assignment of Error No. I*

**THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION TO SUPPRESS BECAUSE THE OFFICER LACKED PROBABLE CAUSE TO JUSTIFY A STOP OF APPELLANT'S VEHICLE FOR SPEEDING, VIOLATING APPELLANT'S [SIC] RIGHTS AS GUARANTEED BY THE FOURTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND COMPARABLE PROVISIONS OF THE OHIO CONSTITUTION.**

*Assignment of Error No. II*

**DESPITE THE TRIAL COURT'S ANALYSIS REGARDING THE SPEED, OFFICER BARTHOLOMEW WAS NOT JUSTIFIED IN STOPPING APPELLANT'S VEHICLE FOR SUSPICION OF DRIVING UNDER SUSPENSION BECAUSE THE OFFICER WAS AWARE THAT APPELLANT POSSESSED PRIVILEGES, AND THEREFORE, THE STOP VIOLATED APPELLANT'S RIGHTS AS GUARANTEED BY THE FOURTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTIUTION [SIC] AND COMPARABLE PROVISIONS OF THE OHIO CONSTITUTION.**

{¶6} Due to the nature of Jenkins' arguments, we elect to address his assignments of error together.

*Assignments of Error Nos. I and II*

{¶7} In his first and second assignments of error, Jenkins argues that the trial court erred in overruling his motion to suppress evidence from the traffic stop. Specifically, in his first assignment of error, Jenkins contends that the police officer lacked probable cause to justify the stop of the vehicle for speeding. In his second assignment of error, Jenkins specifically contends that the police officer

lacked probable cause to justify the stop of the vehicle on suspicion of driving under suspension because the officer was aware that he had some driving privileges, albeit limited.

{¶8} "Appellate review of a decision on a motion to suppress evidence presents mixed questions of law and fact." *State v. Dudli*, 3d Dist. No. 3-05-13, 2006-Ohio-601, ¶12, citing *United States v. Martinez* (C.A.11, 1992), 949 F.2d 1117. The trial court serves as the trier of fact and is the primary judge of the credibility of the witnesses and the weight to be given to the evidence presented. *State v. Johnson* (2000), 137 Ohio App.3d 847, 850. Therefore, when an appellate court reviews a trial court's ruling on a motion to suppress, it must accept the trial court's findings of facts so long as they are supported by competent, credible evidence. *State v. Roberts*, 110 Ohio St.3d 71, 2006-Ohio-3665, ¶100, citing *State v. Fanning (*1982), 1 Ohio St.3d 19, 20. The appellate court must then review the application of the law to the facts de novo. *Roberts*, supra, citing *State v. Burnsid*e, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶8.

{¶9} The Fourth Amendment to the United States Constitution and Section 14, Article I of the Ohio Constitution prohibit unreasonable searches and seizures. Neither the Fourth Amendment to the United States Constitution nor Section 14, Article I of the Ohio Constitution explicitly provides that violations of its provisions against unlawful searches and seizures will result in the suppression

of evidence obtained as a result of such violation, but the United States Supreme Court has held that the exclusion of evidence is an essential part of the Fourth Amendment. *Mapp v. Ohio* (1961), 367 U.S. 643, 649; *Weeks v. United States* (1914), 232 U.S. 383, 394. The primary purpose of the exclusionary rule is to remove the incentive to violate the Fourth Amendment and thereby deter police from unlawful conduct. *State v. Jones*, 88 Ohio St.3d 430, 434, 2000-Ohio-374, overruled on other grounds by *State v. Brown*, 99 Ohio St.3d 323, 2003-Ohio-3931.

{¶10} At a suppression hearing, the State bears the burden of establishing that a warrantless search and seizure falls within one of the exceptions to the warrant requirement, *Xenia v. Wallace* (1988), 37 Ohio St.3d 216, paragraph two of the syllabus; *State v. Kessler* (1978), 53 Ohio St.2d 204, 207, and that it meets Fourth Amendment standards of reasonableness. *Maumee v. Weisner*, 87 Ohio St.3d 295, 297, 1999-Ohio-68, citing 5 LaFave, Search and Seizure (3 Ed.1996), Section 11.2(b).

{¶11} When a law enforcement officer accosts an individual and restricts his freedom of movement, the Fourth Amendment is implicated. *State v. Stephenson*, 3d Dist. No. 14-04-08, 2004-Ohio-5102, ¶16, citing *Terry v. Ohio* (1968), 392 U.S. 1. Generally, in order for a law enforcement officer to conduct a warrantless search, he must possess probable cause, which means that "'there is a

fair probability that contraband or evidence of a crime will be found in a particular place.'" *State v. Carlson* (1995), 102 Ohio App.3d 585, 600, quoting *Illinois v. Gates* (1983), 462 U.S. 213, 214. However, even where probable cause is lacking, it is well-established that a law enforcement officer may temporarily detain an individual where he has a reasonable articulable suspicion that the individual is engaging in criminal activity. *State v. Bobo* (1988), 37 Ohio St.3d 177, 179, citing *Terry*, 392 U.S. at 21.

**{¶12}** Reasonable articulable suspicion is "'specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the intrusion.'" *Stephenson*, 2004-Ohio-5102, at ¶16, quoting *Bobo*, 37 Ohio St.3d at 178. In forming reasonable articulable suspicion, law enforcement officers may "draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that 'might well elude an untrained person.'" *United States v. Arvizu* (2002), 534 U.S. 266, 273, quoting *United States v. Cortez* (1981), 449 U.S. 411, 417-418. Further, an officer who witnesses a traffic violation possesses probable cause, and a reasonable articulable suspicion, to conduct a traffic stop. Id. *Stephenson,* 2004-Ohio-5102, at ¶17.

**{¶13}** R.C. 4510.14 governs the offense of driving while under OVI suspension and provides, in pertinent part:

**(A)  No person whose driver's or commercial driver's license or permit or nonresident operating privilege has been suspended under section 4511.19, 4511.191, or 4511.196 of the Revised Code or under section 4510.07 of the Revised Code for a conviction of a violation of a municipal OVI ordinance shall operate any motor vehicle upon the public roads or highways within this state during the period of the suspension.**

**(B)  Whoever violates this section is guilty of driving under OVI suspension. The court shall sentence the offender under Chapter 2929. of the Revised Code, subject to the differences authorized or required by this section.**

{¶14} In conjunction with R.C. 4510.11, Ohio's statute governing general offenses of driving while under suspension, this Court has previously held that a police officer who runs a check of a license plate and discovers that the vehicle's owner's license is under suspension has a reasonable articulable suspicion to make a valid investigatory stop.  *State v. Cromes*, 3d Dist. No. 17-06-07, 2006-Ohio-6924, ¶32, citing *Rocky River v. Saleh* (2000), 139 Ohio App.3d 313, 327.

{¶15} Additionally, in *State v. Mack*, 9th Dist. No. 24328, 2009-Ohio-1056, the Ninth District Court of Appeals has examined a similar situation where the police officer knew the owner of the vehicle had a suspended license with limited driving privileges, but did not have any specific information concerning when, where, and for what purpose the driver was permitted to operate her vehicle. The Court of Appeals found that the drivers' suspended license combined with the fact that the stop took place at 2:00 a.m. demonstrated the officer had a reasonable articulable suspicion for an investigatory stop of the vehicle.

{¶16} The Fourth Appellate District, in *State v. Elliot*, 4th Dist. No. 08CA50, 2009-Ohio-6006, also examined a similar situation where a police officer observed a vehicle leaving a bar parking lot at approximately 1:00 a.m. The Fourth District found that "[a] police officer has a constitutionally legitimate basis to stop a vehicle when: 1) the officer learns that the registered owner of the vehicle has a suspended license with limited driving privileges; and 2) both the late hour when the driver is operating the vehicle and the location from which the vehicle is driven provide a reasonable inference that the driver may not be operating the vehicle within the scope of his limited driving privileges." 2009-Ohio-6006, at ¶2.

{¶17} The situation sub judice differs from *Mack* and *Elliot*, supra, because Jenkins was observed operating his vehicle during the early evening hours as opposed to during the very late night or very early morning hours. Additionally, the situation differs from *Elliot* in that Jenkins was not observed leaving a bar or some other type of venue unlikely to be permitted by limited driving privileges. Nevertheless, we find applicable the more general findings of *Elliot* concerning the relevancy of the hour during which the driver is operating his vehicle, and the location from which the vehicle is driven. Here, Officer Bartholomew testified that he observed Jenkins operating his vehicle at 6:18 p.m. on a Sunday evening; that he learned through dispatch that Jenkins' license was suspended, but that he had limited driving privileges; that Jenkins had a passenger in his vehicle; and,

Case No. 14-10-10

that Jenkins was traveling away from his address. We find that, from the totality of these circumstances, Officer Bartholomew had a reasonable articulable suspicion that Jenkins may not have been driving within his limited privileges and was permitted to stop the vehicle to investigate further.

{¶18} Accordingly, we overrule Jenkins' second assignment of error.

{¶19} Further, as we have found that the stop of the vehicle was justified on the grounds at issue in Jenkins' second assignment of error, we need not determine whether the stop was also permitted on the grounds that Officer Bartholomew visually estimated Jenkins to be traveling at a speed in excess of the speed limit. Thus, we find Jenkins' first assignment of error to be moot and decline to address it. See App.R. 12(A)(1)(c).

{¶20} Having found no error prejudicial to the appellant herein, in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment Affirmed*

**WILLAMOWSKI, P.J. and PRESTON, J., concur.**

**/jlr**

-11-