[Cite as *State v. Haas*, 2012-Ohio-2362.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## HENRY COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,                CASE NO. 7-10-15

    v.

DUSTIN A. HAAS,                      O P I N I O N

    DEFENDANT-APPELLANT.

Appeal from Napoleon Municipal Court
Trial Court No. TRC1000612AB

**Judgment Reversed**

Date of Decision: May 29, 2012

APPEARANCES:

    *William F. Hayes* for Appellant

    *Paul A. Skaff* for Appellee

**ROGERS, P.J.**

{¶1} Defendant-Appellant, Dustin Haas ("Haas" or "Appellant"), appeals the judgment of the Napoleon Municipal Court convicting him of operating a vehicle under the influence pursuant to R.C. 4511.19(A)(1). On appeal, Haas argues that the trial court erred in overruling his motion to suppress, claiming that the police officer lacked the requisite reasonable articulable suspicion of a violation of R.C. 4511.66, prohibition of parking on a state highway. Finding that the officer did not have a reasonable articulable suspicion that Haas was parking on a state highway, we reverse the judgment of the trial court.

{¶2} In March 2010, Haas was cited for O.V.I. in violation of R.C. 4511.19(A)(1)(d) and parking on a highway in violation of R.C. 4511.66. In July 2010, Haas filed a motion to suppress all evidence related to the traffic stop as the police officer did not have a reasonable articulable suspicion to justify the traffic stop. After a hearing on the motion, the trial court overruled it. Subsequently, Haas entered a plea of no contest and was found guilty. The trial court imposed a sentence of 30 days in jail with 27 days suspended, a $400.00 fine and a six-month license suspension. The Appellant timely filed a notice of appeal.

{¶3} During the hearing on the motion to suppress, the following testimony was heard.

{¶4} Deputy Sheriff Sean Wymer of Henry County testified that on March 16, 2010 at about 2:30 A.M., he was on duty in the village of McClure heading northbound on State Route 65; that he saw a vehicle stopped in the southbound lane of State Route 65 with its lights on and a female outside the vehicle; that the vehicle impeded the southbound lane of traffic; that as he passed the vehicle, it "pulled off" (Hearing Tr., p. 6); that he "turned on the vehicle" (Hearing Tr., p. 6); that as he approached the vehicle it turned onto a side street; that when he turned onto the side street, the vehicle was parked in the first driveway; that he passed the driveway, turned around, came up to the vehicle, and activated his overhead lights; that he and the auxiliary officer approached both sides of the vehicle; that someone exited the vehicle; that he identified the driver as Haas; that he detected an odor of alcohol; that he administered standard field sobriety tests; and, that the reason for the stop was the positioning of the vehicle in the roadway.

{¶5} On cross-examination, Deputy Wymer testified that the vehicle was stopped inside the business and/or residential district of McClure; that he cited Haas for violation of R.C. 4511.66, stopping in the roadway, but that he was not familiar with that section of the code; that he was not aware that that section of the code requires the person stopped on the roadway to be outside of the business or residential district; that Haas was not outside of the business or residential district of McClure; that he pulled into the driveway behind the vehicle, blocked the

vehicle in the driveway, and activated his overhead lights; that Haas was not free to leave at that point; and, that the auxiliary officer ordered a passenger to return to the vehicle. Lastly, Deputy Wymer testified that the reason he stopped Haas was to "investigate why he was parked on the roadway." Hearing Tr., p.15.

{¶6} Alicia Reinbolt ("Alicia") testified that on the night of March 16, 2010, she left an establishment and was walking on the sidewalk along State Route 65 in the town of McClure when she called Haas to pick her up. She testified that when Haas came to pick her up, he stopped on the side of the road, not in the lane of travel; that after she got in the car they went to a friend's house; that when they pulled in the driveway, she saw the police parked behind them; that she attempted to exit the car, but that the police ordered her to get back in the car; and, that she did not feel free to leave due to the officer's screaming.

{¶7} Haas testified that on the night of March 16, 2010, Alicia called him to pick her up; that in doing so, he pulled his car off to the right side of State Route 65; that after he pulled away, he went to his friend's house; that he turned into the driveway, turned off the vehicle, and Alicia and another passenger began to approach the house; that the officer's vehicle pulled in the driveway behind him prohibiting him from exiting the driveway; that the officers yelled at Alicia and the other passenger to get back in the vehicle; and, that he did not feel free to leave.

{¶8} The parties stipulated as to the officer's credentials; that the officer was in uniform in a marked cruiser during the time in question; and, that the event occurred in the village of McClure in the residential district.

{¶9} The trial court entered judgment overruling defendant's motion to suppress, finding that, based on the totality of the circumstances, "it was reasonable to view the conduct of the driver as being suspicious." Judgment Entry, Docket No. 20. It is from this decision Haas appeals presenting the following assignment of error for our review.

*Assignment of Error No. I*

**THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANT/APPELLANT IN FAILING TO SUPPRESS THE OBSERVATIONS OF, AND EVIDENCE OBTAINED BY, THE POLICE AS A RESULT OF THE UNCONSTITUTIONAL STOP OF THE APPELLANT'S VEHICLE. THE STOP WAS UNCONSTITUTIONAL AS THE OFFICER DID NOT HAVE A REASONABLE, ARTICULABLE BASIS TO STOP THE VEHICLE UNDER THE FOURTH AMENDMENT OF THE UNITED STATES CONSTITUTION.**

{¶10} In his sole assignment of error, Haas asserts that the trial court's denial of his motion to suppress was unconstitutional according to the Fourth Amendment of the United States Constitution as the officer did not have a reasonable articulable suspicion to effect a stop. Specifically, because the evidence showed that Haas's actions were lawful and could not have been unlawful, the search was unconstitutional. We agree.

**{¶11}** The State contends that the trial court did not err as the officer's stop was constitutional. Specifically, the State contends that the officer had probable cause or alternatively, reasonable articulable suspicion to justify the stop, based on an objective assessment of the officer's observations. Further, the State argues that it would be unreasonable to expect every law enforcement officer to know the details of every traffic offense and to make an accurate, immediate judgment on the statute's applicability to the present circumstance. We disagree.

**{¶12}** "Appellate review of a decision on a motion to suppress evidence presents mixed questions of law and fact." *State v. Dudli,* 3d Dist. No. 3-05-13, 2006-Ohio-601, ¶ 12, citing *United States v. Martinez*, 949 F.2d 1117 (11th Cir. 1992). The trial court serves as the trier of fact and is the primary judge of the credibility of the witnesses and the weight to be given to the evidence presented. *State v. Johnson*, 137 Ohio App.3d 847, 850 (12th Dist. 2000). Therefore, when an appellate court reviews a trial court's ruling on a motion to suppress, it must accept the trial court's findings of facts so long as they are supported by competent, credible evidence. *State v. Roberts,* 110 Ohio St.3d 71, 2006-Ohio-3665, ¶ 100, citing *State v. Fanning*, 1 Ohio St.3d 19, 20 (1982). The appellate court must then review the application of the law to the facts de novo. *Roberts,* citing *State v. Burnside,* 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8.

{¶13} The Fourth Amendment to the United States Constitution and Section 14, Article I of the Ohio Constitution prohibit unreasonable searches and seizures. Neither the Fourth Amendment to the United States Constitution nor Section 14, Article I of the Ohio Constitution explicitly provides that violations of its provisions against unlawful searches and seizures will result in the suppression of evidence obtained as a result of such violation, but the United States Supreme Court has held that the exclusion of evidence is an essential part of the Fourth Amendment. *Mapp v. Ohio*, 367 U.S. 643, 649, 81 S.Ct. 1684 (1961); *Weeks v. United States*, 232 U.S. 383, 394, 34 S.Ct. 341 (1914). The primary purpose of the exclusionary rule is to remove the incentive to violate the Fourth Amendment and thereby deter police from unlawful conduct. *State v. Jones,* 88 Ohio St.3d 430, 434, 2000-Ohio-374, *overruled on other grounds by State v. Brown,* 99 Ohio St.3d 323, 2003-Ohio-3931.

{¶14} At a suppression hearing, the State bears the burden of establishing that a warrantless search and seizure falls within one of the exceptions to the warrant requirement, *Xenia v. Wallace*, 37 Ohio St.3d 216 (1988), paragraph two of the syllabus; *State v. Kessler*, 53 Ohio St.2d 204, 207 (1978), and that it meets Fourth Amendment standards of reasonableness. *Maumee v. Weisner,* 87 Ohio St.3d 295, 297 (1999), citing 5 LaFave, Search and Seizure (3 Ed.1996), Section 11.2(b).

{¶15} When a law enforcement officer accosts an individual and restricts his freedom of movement, the Fourth Amendment is implicated. *State v. Stephenson,* 3d Dist. No. 14-04-08, 2004-Ohio-5102, ¶ 16, citing *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868 (1968). Generally, in order for a law enforcement officer to conduct a warrantless search, he must possess probable cause, which means that "'there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" *State v. Carlson*, 102 Ohio App.3d 585, 600 (9th Dist. 1995), quoting *Illinois v. Gates*, 462 U.S. 213, 214, 103 S.Ct. 2317 (1983). However, even where probable cause is lacking, it is well-established that a law enforcement officer may temporarily detain an individual where he has a reasonable articulable suspicion that the individual is engaging in criminal activity. *State v. Bobo*, 37 Ohio St.3d 177, 179 (1988), citing *Terry* at 21.

{¶16} Reasonable articulable suspicion is "'specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the intrusion.'" *Stephenson* at ¶ 16, quoting *Bobo* at 178. In forming reasonable articulable suspicion, law enforcement officers may "draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that 'might well elude an untrained person.'" *United States v. Arvizu*, 534 U.S. 266, 273, 122 S.Ct. 744 (2002), quoting *United States v. Cortez*, 449 U.S. 411, 417-418, 101 S.Ct. 690 (1981).

Further, an officer who witnesses a traffic violation possesses probable cause, and a reasonable articulable suspicion, to conduct a traffic stop. *Id.*; *Stephenson* at ¶ 17.

{¶17} The Ohio Supreme Court has reiterated that, "[t]o justify a particular intrusion, *the officer* must demonstrate 'specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion.'" (Emphasis added.) *State v. Mays*, 119 Ohio St.3d 406, 408-409, 2008-Ohio-4539, ¶ 12, citing *Terry*. "The reasonable and articulable suspicion analysis is based on the collection of factors, not the individual factors themselves." *Id.* at 409.

{¶18} Deputy Wymer, testified several times that the sole reason he stopped Haas was to investigate why he was stopped on the roadway. Hearing Tr., pp. 9, 11, 15. Specifically, during cross-examination, the following exchange occurred:

> [Appellant's Attorney]: And the *sole* reason you stopped him was because he was stopped on the roadway, and you believe he was in violation of 4511.66? * * *
>
> [Deputy Wymer]: Yes. (Emphasis added.) Hearing Tr., p. 11.
>
> In its judgment entry, however, the trial court focused on the following:
>
> Deputy Wymer observed a vehicle stopped on a state highway in the early hours of the morning. After he passed the vehicle he observed it pull away so he could reasonably conclude is (sic) was not

disabled and it was occupied. The vehicle then pulled down a side street which caused the Deputy to make further inquiry.

The [c]ourt would find that given the totality of the circumstances it was reasonable to view the conduct of the driver as being suspicious, thus allowing the stop under the reasoning of *Callarman*. Consequently, the [c]ourt would find that there was sufficient credible evidence for Deputy Wymer to have formed a reasonable articulable suspicion to justify the temporary stop of the Haas vehicle to further his investigation into possible violations of the law. Judgment Entry, August 12, 2010.

{¶19} Although it is proper for a trial court to examine the collection of factors rather than the individual factors, the trial court erred in considering factors that Deputy Wymer did not testify to as contributing to the basis for the stop. The trial court stated in its entry that "[t]he vehicle then pulled down a side street which caused the Deputy to make further inquiry." The deputy made no such statement, and did not indicate that any conduct, other than the stopping on the street, had caused him any concern. Since the record reflects that Deputy Wymer decided to initiate the stop solely based on observing Haas parked on the roadway, the additional factors such as Haas's driving away from the scene, turning down a side street, and the time of morning did not influence Deputy Wymer's suspicion. The trial court erred in considering these factors in evaluating the reasonableness of the officer's stop. *See State v. Hageman*, 180 Ohio App.3d 640, 644-645, 2009-Ohio-169, ¶ 19-22 (6th Dist.).

{¶20} The dissent in this case alleges that the majority has given "* * * 'unique' interpretations regarding the appellate review of Fourth Amendment cases * * *." We note first that the dissent cites no authorities for its position. Likewise, the dissent also fell into the trap of embellishing the deputy's testimony, suggesting that the officer saw the vehicle "quickly turn onto a side street and immediately pull into the first available driveway, all before the officer had any opportunity to actually make a law enforcement stop or even activate his overhead lights." Nowhere in the officer's testimony is there any allegation that the defendant's vehicle "quickly" turned onto a side street, or "immediately" pulled into the "first available driveway." These allegations appear for the first time in the dissent's characterization of the events. In fact, the deputy's testimony was that he saw a person enter Appellant's vehicle and that it had started to pull away before he came even with it. Further, the testimony demonstrates that Appellant passed a couple of cross streets before turning off the main route, and the uncontroverted testimony was that the driveway he entered was that of a friend. The dissent's *observations* are immaterial anyway since the officer testified that he had already made his decision to stop the vehicle based on his mistaken notion that a violation of law had occurred, and that was his *sole* reason for the stop. No other facts or circumstances are material to our consideration of the officer's reasonable articulable suspicion. If the officer had found other acts of Appellant to be

suspicious he could have so testified. He did not. We must therefore base our ruling on the deputy's decision to stop the vehicle based on the erroneous thought that he had observed a violation of law, without consideration of subsequent acts of Appellant, real or imagined.

{¶21} Under the circumstances of this case, and limiting our consideration to the matters articulated by the deputy, the proper analysis for determining whether the officer had a reasonable articulable suspicion to effectuate the traffic stop is to determine whether the alleged stopping on the roadway, alone, satisfied the probable cause and/or the reasonable articulable suspicion standard.

{¶22} R.C. 4511.66 prohibits parking on a highway and reads in pertinent part:

> Upon any highway *outside a business or residence district* no person shall stop, park, or leave standing any vehicle, whether attended or unattended, upon the paved or main traveled part of the highway if it is practicable to stop, park, or so leave such vehicle off the paved or main traveled part of said highway. (Emphasis added.). R.C. 4511.66.

{¶23} Deputy Wymer testified that he was not familiar with this section of the code. Moreover, the parties stipulated, and the officer testified, that Haas's vehicle was not stopped outside a business or residential district as required by the statute. The issue we must address, then, is whether an officer can have a reasonable articulable suspicion that the individual is engaging in criminal

activity, when the behavior cited by the officer is not, in fact, nor could it be, illegal. We find that an officer cannot.

**{¶24}** This court has previously held that an officer lacked reasonable articulable suspicion to initiate a traffic stop when the defendant clearly did not violate either of two statutes which the officer testified provided the basis for his suspicion. *State v. Young,* 3d Dist. No. 13-03-52, 2004-Ohio-540. In *Young*, a Tiffin police officer stopped Linda Young after he observed her make a right turn from a driveway into the left lane of travel on East Market Street. He also testified that Young made an improper lane change by failing to signal before driving into the left lane. The officer testified that he stopped Young for improperly turning onto East Market Street. Young contended that she violated neither R.C. 4511.33, rules for driving in marked lanes, as she did not leave one lane of travel and move into another lane, but rather, turned directly into the outer lane of travel, where she remained, nor R.C. 4511.36, rules for turns at intersections, as she was not making a turn at an intersection, but rather was making a turn from her driveway onto a street. This Court found that since Young violated neither statute that provided the basis for the officer's alleged reasonable articulable suspicion, the stop was unconstitutional, and the trial court should have granted the motion to suppress.

**{¶25}** The First District has also held that a stop is unconstitutional where the defendant's conduct does not violate the law the officer cites as providing the

basis for his or her reasonable articulable suspicion. In *State v. Bacher*, Officer Norton monitored a vehicle, driven by defendant Bacher, traveling 42 and 43 miles per hour in a 65-mile per hour zone. 170 Ohio App.3d 457, 2007-Ohio-727 (1st Dist.). Officer Norton stopped Bacher for violating the slow-speed statute which requires that the slow-moving vehicle "impede or block the normal and reasonable movement of traffic." R.C. 4511.22. The First District held that since there was no evidence supporting a reasonable suspicion that Bacher was impeding or blocking traffic or any other criminal activity, the stop was unconstitutional.

{¶26} The Sixth District held that the officer did not have a reasonable articulable suspicion of criminal activity to effectuate a traffic stop when the defendant's conduct did not violate the statute which provided the basis for the officer's suspicion. In *State v. Hageman,* Officer Viers observed Hageman turn left onto High Street into the curb, rather than the inside, lane. 180 Ohio App.3d 640, 2009-Ohio-169 (6th Dist.). Viers stated that the basis for the traffic stop was the improper turn. Because both the Bryan Municipal Ordinance and R.C. 4511.36 govern turns at intersections, and because the officer did not know whether Hageman turned at an intersection or onto High Street from the bowling alley driveway, the Sixth District held that the officer did not have a reasonable articulable suspicion to effectuate the stop, and reversed the trial court's denial of

his motion to suppress. *See State v. McDonald*, 4th Dist. No. 04CA07, 2004-Ohio-5395, ¶ 21-25 for further support that a stop is unconstitutional if defendant did not violate the statute which provided the basis for the stop.

**{¶27}** In light of the relevant case law from this and other districts, we hold that when a defendant's conduct does not facially violate the traffic statute which provides the sole basis for the officer's alleged reasonable articulable suspicion, the stop is unconstitutional.

**{¶28}** In support of its decision, the trial court cites cases which stand for the proposition that an officer's reasonable articulable suspicion is not negated by the failure to ultimately establish that a traffic offense occurred and to attain a conviction. Stated in other words, courts have held that an officer's reasonable articulable suspicion does not require proof beyond a reasonable doubt that the defendant has satisfied every element of the offense,[1] or that an officer adequately predict the outcome of an arrestee's legal defenses or ultimate conviction.[2] We agree with this proposition. We assert, however, that there is a difference between proving elements beyond a reasonable doubt and making a prima facie showing that the defendant's conduct has violated the elements of a statute on its face. In

---

[1] See *e.g., Westlake v. Kaplysh* (1997), 118 Ohio App.3d 18, 20.
[2] *State v. Zervos*, 6th Dist. No. L-0901249, 2010-Ohio-1998, ¶13; *Bowling Green v. Godwin*, 110 Ohio St.3d 58, 62, 2006-Ohio-3563, ¶15; *State v. Mays*, 894 N.E.2d 1204, 1208, 2008-Ohio-4539, ¶17.

order for a traffic stop to be constitutional, an officer must be able to articulate that the defendant's conduct violated a traffic law on its face.[3]

**{¶29}** The trial court cites *Bowling Green v. Godwin*, 110 Ohio St.3d 58, 2006-Ohio-3563. In that case, the issue addressed by the Ohio Supreme Court was whether a defendant's failure to yield to a traffic-control device that lacked the statutorily required authorization could serve as the basis for a traffic stop. Ultimately, the Supreme Court held in the affirmative as "[n]othing in the record . . . justifies the conclusion that an objectively reasonable officer would have had any reason to doubt their enforceability." *Id.* at ¶ 17. Because the traffic sign was not irregular in size, height, placement, visibility, or distance, there was no way for the officer to have known that the traffic sign was not authorized by city council and therefore no reason for the officer to doubt the sign's validity. Under the facts of that case, the court reasoned that "probable cause does not require the officer to correctly predict that a conviction will result." *Id.* at ¶ 15.

**{¶30}** The trial court sub judice also relied on *State v. Zervos*, 6th Dist. No. L-09-1249, 2010-Ohio-1998, which relies heavily on *Godwin*. In that case, the officer stopped Zervos for what the officer believed was an illegal U-turn. Zervos argued that there was no probable cause as the requirement in the U-turn statute that no U-turn be made if the vehicle cannot be seen by another approaching

---

[3] See Judge Sherck's dissent in *State v. Nickelson*, 6th Dist. No. H-00-036 (2001).

vehicle was not met due to the absence of other traffic on the road. Ultimately, the Sixth District affirmed the trial court's denial of the motion to suppress. Relying on *Godwin,* the court held that the lack of sufficient evidence to establish a U-turn violation has no bearing on the officer's reasonable suspicion prior to the stop. We find, however, that in the present case, the trial court's reliance on *Zervos* is misplaced as *Godwin* is factually distinguishable from the instant case as well as *Zervos.*

{¶31} Primarily, *Godwin* resolved a very limited issue regarding the violation of a traffic-control device that lacked proper authorization. This issue was grounded in whether the officer had probable cause to effectuate a stop when he had "no reason to doubt [the sign's] enforceability." *Godwin* at ¶17. In *Godwin*, everything within the purview of the officer at the time of the stop indicated that Godwin had violated a traffic-control device. Therefore, there was probable cause to effectuate a stop. The issue in *Zervos,* however, was whether an officer had probable cause to effectuate a stop when Zervos' conduct simply did not violate the statute which provided the basis for the stop. Everything within the officer's purview at the time of the stop indicated that *Zervos* had in fact not violated a traffic law. The dissent noted that "[b]ecause there was no offense and there was no set of facts to prompt a reasonable suspicion that an offense had occurred, there was no reason to stop appellant's vehicle." *Id.* at ¶ 34. The

majority's holding that there was reasonable suspicion is unfounded and is a disconcerting expansion of the holding in *Godwin*, and we decline to follow it.

{¶32} Lastly, the trial court relied on the Ninth Circuit's analysis in *United States v. Wallace*, 213 F.3d 1216 (9th Cir. 2000). In that case, the court reasoned that law enforcement officers, when forming their probable cause, are "not taking the bar exam." *Id.* at 1220. The Ninth Circuit emphasized that the issue is not how well the officer understood California laws, but whether he had probable cause to believe that what he observed was a violation of the law. This analysis simply begs the question, how can a law enforcement officer reasonably believe conduct violates a law if he does not understand or have a working knowledge of the law? Which begs another question, to what standard of knowledge of the laws they are enforcing should we hold our law enforcement officers before they can infringe upon one's constitutional right to be free from warrantless seizures?

{¶33} The State argues that it would be unreasonable to expect our law enforcement officers to know the details of every traffic offense and to make an accurate determination of the statute's applicability. Such requirements, the State explains, would hamper law enforcement to the extent it would cause "paralysis by analysis." We aver that knowledge of the traffic laws is the very essence of a patrol officer's job. To require any less than an accurate, working knowledge of the traffic offenses and to fail to ensure that the one being seized at least

-18-

reasonably appeared to have violated a statute on its face gravely deprives citizens of their constitutional right to be free from warrantless searches and seizures.

{¶34} This is the unfortunate scenario in the present case. Officer Wymer unconstitutionally seized Haas under the suspicion that Haas violated a law. However, the officer's own testimony revealed that he did not know the requirements of this very law. Haas was not and could not have been engaged in the specific criminal activity testified to by Officer Wymer. Yet he was seized and arrested due to the officer's lack of knowledge of the very law he was enforcing.

{¶35} In light of the above, we find that, in analyzing the officer's stated reasonable articulable suspicion, the trial court erred by considering factors that Deputy Wymer did not consider at the time he initiated the traffic stop. Further, because Haas neither violated nor could have violated R.C. 4511.66, Deputy Wymer failed to establish a prima facie violation of such statute, rendering his suspicion of criminal activity unreasonable. Accordingly, we find that Haas' stop was unconstitutional and sustain his assignment of error.

*Judgment Reversed*

**WILLAMOWSKI, J., concurs.**

**/jlr**

**SHAW, J., DISSENTS.**

{¶36} In reversing the trial court, the majority goes far beyond the simple totality of the circumstances analysis necessary to decide this case, and instead, bases its decision upon its own "unique" interpretations regarding the appellate review of Fourth Amendment cases, police practices in general and the proper role of the arresting officer and the trial judge at a suppression hearing. I respectfully dissent in order to emphasize that I do not concur with the majority opinion as to any of these interpretations.

{¶37} In this case, the officer first observed the defendant's vehicle to be stopped with its lights on in the southbound lane of two lane State Route 65 within the village of McClure at 2:30 a.m. While the officer was passing by and turning his patrol car around to approach the defendant's vehicle, the officer observed a person outside the defendant's vehicle get into the vehicle, saw the vehicle pull away, quickly turn onto a side street and immediately pull into the first available driveway, all before the officer had any opportunity to actually make a law enforcement stop or even activate his overhead lights.

{¶38} In fact, the events apparently happened so quickly that the officer following in his patrol car actually overshot the first driveway and had to proceed further down the street, turn around in another driveway and drive back to the first driveway. As the officer pulled his vehicle in front of the first driveway, *he then*

*activated his overhead lights* and verbally addressed a female passenger who was exiting the defendant's vehicle. Only then did he approach the defendant/operator of the vehicle.

{¶39} Assuming this was even a "law enforcement" stop, the majority cites settled authority establishing that our determination of reasonable, articulable, suspicion in these cases is properly based upon the totality of the circumstances within the police officer's knowledge. However, by either disregarding or ineffectively attempting to distinguish this authority, the majority elects instead to base its decision on the rather bizarre ruling that a court's evaluation of a *Terry* stop is not to be based upon all of the facts and circumstances that the officer observed prior to the stop, but only upon those facts which the officer identifies as the primary reason for initiating the investigation.

{¶40} Thus, the majority notes that the officer in this case testified to at least five different observations of the defendant's conduct. These included seeing the defendant's vehicle stopped in the roadway with its lights on, at 2:30 a.m., suddenly pulling away, quickly turning onto a side street, and immediately pulling into a driveway. Not mentioned was the additional observation of seeing someone outside the vehicle getting into the car while it was stopped in the roadway as the officer first drove by.

{¶41} However, because the officer testified at the suppression hearing that it was seeing the vehicle stopped in the roadway that led him to initiate the investigation, the majority rules that only that one circumstance of the vehicle being stopped in the roadway may be considered by this court (or the trial court) in determining whether all of the officer's subsequent actions were warranted, *notwithstanding that all of the observations testified to by the officer took place before any detention was initiated by the officer*. This defies any authority or common sense.

{¶42} In other words, according to the majority, if an officer testifies into the record as to fifty separate circumstances he personally observed, which in totality clearly establish a reasonable articulable suspicion, but then testifies that one of those circumstances was the primary reason he initiated the stop, the trial court (and the appellate court) are precluded from considering the remaining forty-nine circumstances testified to by the officer in ruling on the constitutionality of the stop. And if the one circumstance named by the officer does not, by itself, establish a specific statutory violation of law, the trial court is compelled to invalidate the stop, without considering anything else the officer may have observed prior to initiating the stop.

{¶43} More significantly perhaps, the majority effectively holds that any trial judge conducting a suppression hearing, who is charged with making the

*legal determination as to whether all of the facts known to the police officer collectively constitute a reasonable, articulable, suspicion*, of criminal activity or emergency sufficient to justify a *Terry* stop, is not permitted to consider anything other than *the personal opinion of the police officer as to what he thinks caused him at the time to initiate the investigation* that eventually led to the stop.

**{¶44}** In addition to being absurd on its face, the majority holding directly challenges the constitutional and statutory authority of trial courts and appellate courts in this state to consider and review all of the evidence properly before it in evaluating Fourth Amendment issues in criminal cases.

**{¶45}** Of course, the ruling of the majority that we must exclusively focus upon the officer's stated reasons, motives or personal state of mind instead of the objective facts observed by the officer in Fourth Amendment cases, also happens to conflict with numerous case decisions from other courts cited in the majority opinion and elsewhere. *See* for example, *State v. Jamison* 2nd Dist. No. 19357, 2003-Ohio-907, ¶ 13. (Legal issues involved in a Fourth Amendment challenge are not controlled by the particular reasons given by a law enforcement officer for why he engaged in the particular intrusion involved.); *State v. Crenshaw*, 6th Dist.No. L-02-1337, 2003-Ohio-4860, ¶ 11. *State v. Runyon*, 12th Dist.No. CA2010-05-032, 2011-Ohio-263, ¶ 18 (Officer's underlying subjective intent or motivation for stopping a vehicle does not invalidate an otherwise valid traffic

stop); *State v. Swinderman*, 5th Dist. No. 2009-AP-100050, 2010-Ohio-2659, }23; *State v. Thomas*, 8th Dist. No. 91891, 2009-Ohio-3461, }49; *State v. Salvato* (Aug. 13, 1999), 1st Dist. No. C-980939, at *2 (Constitutionality of search is not determined by officer's stated reason or motive for the search but on objective factors articulated by officer. If search is objectively reasonable, officer's stated reasons or motive for search are irrelevant.); *Brigham City, Utah v. Stuart* (2006), 547 U.S. 398, 404 S.Ct. 1943 ("An action is 'reasonable' under the Fourth Amendment, regardless of the individual officer's state of mind, as long as the circumstances, viewed *objectively*, justify [the] action."

{¶46} But, the majority does not stop there. The majority also reverses this case because it finds that the officer failed to prove a valid violation of a criminal statute in order to justify investigating a car stopped in the public roadway at 2:30 a.m. All because the officer, who did have legitimate safety concerns as well as the correct traffic offense applicable to this situation in mind, was not aware of the exact physical boundaries of the village which created an exception to the offense.

{¶47} Again, the majority seems to acknowledge that this is a *Terry* situation involving a temporary investigative detention by the officer. The majority also seems to acknowledge in principle, the settled authority establishing that *Terry* does not require establishing probable cause that a criminal statute has been violated, but only that the officer establish a reasonable, articulable suspicion

of criminal activity or emergency circumstance to warrant the temporary detention. Inexplicably, the majority does not follow this authority either and proceeds to rule that because the officer failed to establish that the defendant was in actual violation of the specific traffic offense the officer had in mind, everything else that the officer saw or did prior to the stop is invalid. As a result, the ruling of the majority on this issue is also wrong on its face, represents the personal views of the majority only and does not accurately reflect the authority contained in its own opinion.

{¶48} I personally concur with the trial judge that the totality of these circumstances warranted the limited investigative detention of the officer in this case. Thus, I believe the assignment of error should be overruled and the judgment of the trial court should be affirmed. But whether we affirm or reverse, our decision should be based upon the proper standards of appellate review governing Fourth Amendment issues.