[Cite as *State v. Womack*, 2021-Ohio-98.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## AUGLAIZE COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,               CASE NO.  2-20-12

    v.

CHRISTINA M. WOMACK,           O P I N I O N

    DEFENDANT-APPELLANT.

Appeal from Auglaize County Common Pleas Court
Trial Court No. 2019-CR-0239

Judgment Affirmed

Date of Decision:  January 19, 2021

APPEARANCES:

    *Nick A. Catania* for Appellant

    *Benjamin R. Elder* for Appellee

**ZIMMERMAN, J.**

{¶1} Defendant-appellant, Christina M. Womack ("Womack"), appeals the March 20, 2020 judgment entry of sentence of the Auglaize County Court of Common Pleas. We affirm.

{¶2} The case stems from the October 10, 2019 traffic stop of the vehicle operated by Womack by Officer Joseph Welker ("Officer Welker") of the Wapakoneta Police Department after Officer Welker observed Womack fail to properly signal her intention to turn as required by R.C. 4511.39. At the time of the stop, there were two passengers in the vehicle with Womack—Peter Lotzer ("Lotzer"), who was riding in the front passenger seat, and William Pitney ("Pitney"), who was a passenger in the rear of the vehicle. During the stop, Officer Welker became suspicious of criminal activity—namely drug activity—based on his interactions with Womack, Lotzer, and Pitney. Thus, Officer Welker conducted an open-air sniff with his K-9 partner ("Rico") around Womack's vehicle, while another law enforcement officer—Officer Jared Clark ("Officer Clark") of the Wapakoneta Police Department—assisted him with writing the warning for the traffic violation. Rico alerted to the presence of contraband in Womack's vehicle, and a subsequent search of the vehicle revealed drugs.

{¶3} On October 24, 2019, the Auglaize County Court of Common Pleas indicted Womack on a single count of possession of drugs in violation of R.C.

2925.11(A), (C)(1)(c). (Doc. No. 1). Womack appeared for arraignment on October 25, 2019 and entered a plea of not guilty. (Doc. No. 10).

{¶4} The case proceeded to a jury trial on January 8-9, 2020, during which the jury found Womack guilty of the charge set forth in the indictment. (Doc. Nos. 50, 51). On March 20, 2020, the trial court sentenced Womack to a minimum term of six years in prison to a maximum term of nine years in prison. (Doc. No. 76).

{¶5} Womack filed a motion for leave to file a delayed appeal with this court on May 27, 2020, which we granted on June 12, 2020. (*See* Doc. Nos. 91, 106). She raises one assignment of error for our review

### Assignment of Error

**The Attorney Retained to Represent the Defendant-Appellant in This Case Did Not Provide Effective Assistance of Counsel.**

{¶6} In her sole assignment of error, Womack argues that the that her trial counsel was ineffective for failing to file a motion to suppress evidence obtained from the traffic stop in this case. Specifically, Womack contends that a motion to suppress evidence would have had a reasonable probability of success because (1) "there was not reasonable articulable suspicion for the stop"; (2) "the officer detained the car and Ms. Womack longer than necessary to accomplish the purpose of the stop in order to run a drug dog"; and (3) "the reliability of the drug dog should have been called into question." (Appellant's Brief at 5).

*Standard of Review*

**{¶7}** A defendant asserting a claim of ineffective assistance of counsel must establish: (1) the counsel's performance was deficient or unreasonable under the circumstances; and (2) the deficient performance prejudiced the defendant. *State v. Kole*, 92 Ohio St.3d 303, 306 (2001), citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052 (1984). In order to show counsel's conduct was deficient or unreasonable, the defendant must overcome the presumption that counsel provided competent representation and must show that counsel's actions were not trial strategies prompted by reasonable professional judgment. *Strickland* at 687. Counsel is entitled to a strong presumption that all decisions fall within the wide range of reasonable professional assistance. *State v. Sallie*, 81 Ohio St.3d 673, 675 (1998). Tactical or strategic trial decisions, even if unsuccessful, do not generally constitute ineffective assistance. *State v. Carter*, 72 Ohio St.3d 545, 558 (1995). Rather, the errors complained of must amount to a substantial violation of counsel's essential duties to his client. *See State v. Bradley*, 42 Ohio St.3d 136, 141-142 (1989), quoting *State v. Lytle*, 48 Ohio St.2d 391, 396 (1976), *vacated in part on other grounds*, 438 U.S. 910, 98 S.Ct. 3135 (1978).

**{¶8}** "Prejudice results when 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *State v. Liles*, 3d Dist. Allen No. 1-13-04, 2014-Ohio-259, ¶ 48, quoting

*Bradley* at 142, citing *Strickland* at 691. "'A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Id.*, quoting *Bradley* at 142 and citing *Strickland* at 694.

*Analysis*

{¶9} "'When a claim of ineffective assistance of counsel is based on counsel's failure to file a particular motion, a defendant must show that the motion had a reasonable probability of success.'" *State v. Dahms*, 3d Dist. Seneca No. 13-16-16, 2017-Ohio-4221, ¶ 101, quoting *State v. Ferguson*, 10th Dist. Franklin No. 16AP-307, 2016-Ohio-8537, ¶ 11. Here, because Womack's ineffective-assistance-of-counsel claim centers on her trial counsel's failure to file a motion to suppress evidence, an analysis of Womack's assignment of error necessitates not only a review of the law pertaining to suppression but the specific reasons that the Womack contends her constitutional rights were violated. *See id.*

{¶10} The Fourth Amendment to the United States Constitution and Article I, Section 14 of the Ohio Constitution generally prohibit warrantless searches and seizures, and any evidence that is obtained during an unlawful search or seizure will be excluded from being used against the defendant. *State v. Jenkins*, 3d Dist. Union No. 14-10-10, 2010-Ohio-5943, ¶ 9; *State v. Steinbrunner*, 3d Dist. Auglaize No. 2-11-27, 2012-Ohio-2358, ¶ 12.

> Neither the Fourth Amendment to the United States Constitution nor Section 14, Article I of the Ohio Constitution explicitly provides that

> violations of its provisions against unlawful searches and seizures will result in the suppression of evidence obtained as a result of such violation, but the United States Supreme Court has held that the exclusion of evidence is an essential part of the Fourth Amendment.

*Jenkins* at ¶ 9, citing *Mapp v. Ohio*, 367 U.S. 643, 649, 81 S.Ct. 1684 (1961) and *Weeks v. United States*, 232 U.S. 383, 394, 34 S.Ct. 341 (1914).

{¶11} "A traffic stop constitutes a seizure and implicates the protections of the Fourth Amendment" but "'is constitutionally valid if an officer has a reasonable and articulable suspicion that a motorist has committed, is committing, or is about to commit a crime.'" *State v. Dillehay*, 3d Dist. Shelby No. 17-12-07, 2013-Ohio-327, ¶ 13, citing *State v. Johnson*, 3d Dist. Hancock No. 5-07-43, 2008-Ohio-1147, ¶ 16; *State v. Aldridge*, 3d Dist. Marion No. 9-13-54, 2014-Ohio-4537, ¶ 10, quoting *State v. Mays*, 119 Ohio St.3d 406, 2008-Ohio-4539, ¶ 7. "The Supreme Court of Ohio has defined 'reasonable articulable suspicion' as 'specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the intrusion [upon an individual's freedom of movement].'" *State v. Shaffer*, 3d Dist. Paulding No. 11-13-02, 2013-Ohio-3581, ¶ 18, quoting *State v. Bobo*, 37 Ohio St.3d 177, 178 (1988). "In forming reasonable articulable suspicion, law enforcement officers may 'draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that "might well elude an untrained person."'" *Jenkins* at ¶ 12, quoting *United States v. Arvizu*, 534 U.S. 266, 273, 122 S.Ct. 744

(2002), quoting *United States v. Cortez*, 449 U.S. 411, 417-418, 101 S.Ct. 690 (1981). "In determining whether reasonable articulable suspicion exists, a reviewing court must look to the totality of the circumstances." *Steinbrunner* at ¶ 14, citing *State v. Andrews*, 57 Ohio St.3d 86, 87-88 (1991). "A police officer's testimony alone is sufficient to establish reasonable articulable suspicion for a stop." *State v. McClellan*, 3d Dist. Allen No. 1-09-21, 2010-Ohio-314, ¶ 38, citing *State v. Claiborne*, 2d Dist. Montgomery No. 19060, 2002-Ohio-2696.

{¶12} In addition to a reasonable and articulable suspicion of criminal activity, "[p]robable cause is certainly a complete justification for a traffic stop," but it is not required to justify a traffic stop. *Mays* at ¶ 23. "Probable cause" is a stricter standard than and subsumes "reasonable and articulable suspicion." *Id.*, citing *State v. Evans,* 67 Ohio St.3d 405, 411 (1993). Accordingly, "an officer who witnesses a traffic violation possesses probable cause, *and* a reasonable articulable suspicion, to conduct a traffic stop." (Emphasis added.) *State v. Haas,* 3d Dist. Henry No. 7-10-15, 2012-Ohio-2362, ¶ 16, citing *Arvizu* at 273. *See also Mays* at ¶ 24.

{¶13} In this case, Officer Welker stopped Womack for violating R.C. 4511.39, which "'requires that a turn signal be given continuously for at least one hundred feet before turning.'" *State v. Harpel*, 3d Dist. Hardin No. 6-20-03, 2020-Ohio-4513, ¶ 20, quoting *State v. Wade*, 3d Dist. Seneca No. 13-16-23, 2017-Ohio-

1319, ¶ 9, citing R.C. 4511.39(A).    However, on appeal, Womack contends that she "did signal her turn and a Motion Hearing would have brought out testimony from the Officer and video evidence which could have allowed the Trial Court to find she did in fact signal early enough to avoid reasonable suspicion for a traffic stop."  (Appellant's Brief at 6).

{¶14} In our review, Womack fails to specify how a motion to suppress evidence would have had a reasonable probability of success.  That is, Womack fails to specify what evidence would have been produced at a suppression hearing which would have contradicted Officer Welker's trial testimony that he stopped Womack for "failing to signal [her] intended turn in a significant manner" since "[t]he vehicle was so close to the stop sign [that] it was within the yellow markings of where you cannot park to for an intersection."  (Jan. 8-9, 2020 Tr., Vol. I, at 99).

{¶15} The record reveals that Officer Welker's testimony established that, even though Womack activated her turn signal before she turned, Womack failed to signal her turn continuously for at *least 100 feet* before turning as required by R.C. 4511.39. *See Harpel* at ¶ 20.  Thus, because Womack did not provide any evidence to the contrary, we conclude that Officer Welker had probable cause to stop Womack.  Accordingly, we cannot conclude that a motion to suppress evidence based on Officer Welker's stop of Womack would have had a reasonable probability

of success. Therefore, Womack's trial counsel was not ineffective for failing to file a motion to suppress evidence challenging Officer Welker's basis for the stop.

{¶16} Womack further contends that a motion to suppress evidence would have had a reasonable probability of success because Officer Welker "detained the car and Ms. Womack longer than necessary to accomplish the purpose of the stop in order to run a drug dog." (Appellant's Brief at 5). "It is well settled that the use of a trained drug-detection dog during a lawful traffic stop generally does not trigger Fourth Amendment protection." *State v. Green*, 7th Dist. Mahoning No. 15 MA 0006, 2016-Ohio-4810, ¶ 14, citing *Illinois v. Caballes*, 543 U.S. 405, 409, 125 S.Ct. 834 (2005). *See also State v. Werder*, 6th Dist. Fulton No. F-19-008, 2020-Ohio-2865, ¶ 14 ("It is well-established that '[a] K-9 sniff is not a search within the meaning of the Fourth Amendment.'"), quoting *State v. Young*, 6th Dist. Erie No. E-13-011, 2015-Ohio-398, ¶ 29.

{¶17} "A drug-detection dog may sniff around the exterior of a defendant's vehicle during a lawful traffic stop in absence of a reasonable suspicion of drug-related activity." *Green* at ¶ 14, citing *Caballes* at 409. However, "'a traffic stop may not be extended in order to conduct a dog sniff, absent reasonable suspicion.'" *Id.*, quoting *Rodriguez v. United States*, 575 U.S. 348, 135 S.Ct. 1609, 1616-1617 (2015). That is,

> the stop may not be prolonged beyond the time reasonably required to
> complete the 'mission' of the stop, which includes issuing the ticket

> or warning and other ordinary inquiries incident to the traffic stop and related to officer safety such as "checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance."

*Id.* at ¶ 16, quoting *Rodriguez* at 1615. "'[T]he critical question is not whether the dog sniff occurs before or after the officer issues a ticket, but whether conducting the sniff adds time to the stop.'" *Id.*, quoting *Rodriguez* at 1616.

{¶18} Similar to her previous argument, Womack failed to meet her burden of demonstrating how her argument would have had a reasonable probability of success. In sum, Womack argues the stop could have been accomplished more expeditiously than the time it took to effectuate the stop in this case since Officer Welker's "stated * * * objective or mission in the stop was to give a warning for a violation of turn signal." (Appellant's Brief at 6). In other words, Womack failed to demonstrate how her suppression argument would have had a reasonable probability of success under the *Rodriguez* standard—that is, Womack failed to offer any argument as to how Officer Welker unconstitutionally prolonged the duration of the stop to permit Rico to conduct an open-air sniff.

{¶19} Nevertheless, in our review of the record, there is no evidence that a motion to suppress evidence based on an argument that the traffic stop was unconstitutionally prolonged would have had any reasonable probability of success. That is, there is no evidence in the record to suggest that Womack's "detention for the traffic violation was of sufficient length to make it constitutionally dubious."

*See State v. Batchili*, 113 Ohio St.3d 403, 2007-Ohio-2204, ¶ 14 ("There simply is no evidence to suggest that Batchili's detention for the traffic violation was of sufficient length to make it constitutionally dubious.").

{¶20} At trial, Officer Welker identified State's Exhibit 15 as a true and accurate video recording from his body camera depicting the traffic stop of Womack, which was subsequently played for the jury. (Jan. 8-9, 2020 Tr., Vol. I, at 102); (State's Ex. 15). The video recording from Officer Welker's body camera depicts Officer Welker stopping the vehicle operated by Womack; obtaining Womack's, Lotzer's, and Pitney's identifying information; and asking Womack to step outside of the vehicle to speak with him while he verified their identities. From the time that Officer Welker stopped the vehicle until the time that Womack exited the vehicle, 2 minutes and 30 seconds elapsed.

{¶21} While confirming their identities, Officer Welker questioned Womack as to her purpose for traveling to Wapakoneta—namely, her reason for traveling to the residence at which Officer Welker initially observed her vehicle. This exchange lasted approximately 6 minutes. Thereafter, the video depicts Officer Clark assisting Officer Welker with writing the warning for the traffic violation, while Officer Welker questions Pitney (for approximately 1 minute) as to his purpose for traveling to the residence at which Officer Welker observed him exit and enter Womack's vehicle.

**{¶22}** After asking Womack a few additional questions and having Lotzer and Pitney exit the vehicle, Officer Welker conducted the open-air sniff around the vehicle with Rico at approximately 10 minutes into the stop. During this time, Officer Clark can be seen continuing to write the warning for the traffic violation at 9 minutes and 30 seconds into the stop. Indeed, Officer Clark testified that he "completed it while Officer Welker was conducting his open-air sniff around the vehicle." (Jan. 8-9, 2020 Tr., Vol. I, at 154). Based on these facts, there is no evidence that Womack's detention was delayed so that the dog could conduct its search. *Compare Batchili* at ¶ 13 (concluding that there was "no showing that the detention was delayed so that the dog could conduct its search, and therefore, there was no constitutional violation" based on the evidence in "[t]he record establish[ing] that at the time the dog alerted, eight minutes and 56 seconds into the stop, Trooper Arnold was still waiting for the results of the criminal-background check").

**{¶23}** Nevertheless, even assuming without deciding that Womack's detention was unreasonably "prolonged by the request for a dog search, 'the detention of a stopped driver may continue beyond [the normal] time frame when additional facts are encountered that give rise to a reasonable, articulable suspicion of criminal activity beyond that which prompted the initial stop.'" *Id.* at ¶ 15, quoting *State v. Howard*, 12th Dist. Preble No. CA2006-02-002, 2006-Ohio-5656, ¶ 16. "Moreover, 'in order to delay a traffic stop for the purpose of conducting a K-

9 drug "sniff," the reasonable, articulable suspicion required must be of *drug activity.*'" (Emphasis sic.) *State v. Sealey*, 11th Dist. Lake No. 2019-L-128, 2020-Ohio-987, ¶ 7, quoting *State v. Eggleston*, 11th Dist. Trumbull No. 2014-T-0068, 2015-Ohio-958, ¶ 28.

**{¶24}** Here, considering the totality of the circumstances, Officer Welker had a reasonable, articulable suspicion of drug activing necessary to prolong the traffic stop for the purpose of conducting the open-air sniff with Rico. *Compare State v. Balanik*, 11th Dist. No. 2015-L-112, 2016-Ohio-3511, ¶ 27 (concluding that law enforcement had a reasonable, articulable suspicion of drug activing warranting the extended traffic stop "based on the collective nervousness of the occupants of the car [and] the inconsistent statements as to where the occupants were going that night"); *State v. Stephenson*, 12th Dist. Warren No. CA2014-05-073, 2015-Ohio-233, ¶ 24 (concluding that law enforcement "had reasonable, articulable suspicion of drug-related activity to extend the duration of the traffic stop to investigate further and call the canine unit" based, in part, on nervous behavior and because "[t]he men gave inconsistent stories regarding the purpose of their trip"). Specifically, Officer Welker observed Womack pick up Pitney from a known drug house in Wapakoneta and received conflicting stories in response to his questions regarding their purpose for being at that house. Furthermore, Officer Welker testified that Womack and Lotzer not only acted nervous when they saw him pass by while they were parked

outside the known drug house but also testified that Womack, Lotzer, and Pitney acted nervous during his interactions with them during the traffic stop. (*See* Jan. 8-9, 2020 Tr., Vol. I, at 96, 105-107). Indeed, Officer Welker testified that the totality of his interactions with Womack, Lotzer, and Pitney raised his suspicions that criminal activity was afoot.

{¶25} For these reasons, we conclude that Womack's argument that a motion to suppress evidence based on an argument that the traffic stop was unconstitutionally prolonged would not have had any reasonable probability of success. Therefore, Womack's trial counsel was not ineffective for failing to file a motion to suppress evidence alleging that she was unconstitutionally detained longer than necessary to effectuate the purpose of the stop.

{¶26} Finally, Womack argues that her trial counsel was ineffective for failing to file a motion to suppress evidence challenging "the reliability of the drug dog." (Appellant's Brief at 6). Similar to her previous arguments, Womack failed to meet her burden of demonstrating that a motion to suppress evidence challenging Rico's training and reliability would have had a reasonable probability of success. Here, Womack asserts that, had her trial counsel filed a motion to suppress evidence, he or she could have questioned Officer Welker as to his K-9 partner's reliability over the eight years that he has worked with the dog. That is not the standard. To demonstrate that her trial counsel was ineffective, Womack must offer evidence to

show that a motion to suppress evidence would have had a reasonable probability of success based on an argument that Rico was unreliable, and Womack failed to meet that threshold.

{¶27} "When a trained narcotics dog alerts to the odor of drugs from a lawfully detained vehicle, probable cause to search a vehicle and its contents exists." *State v. Fritz,* 12th Dist. Clermont No. CA2019-12-094, 2020-Ohio-5231, ¶ 29, citing *State v. Blatchford,* 12th Dist. Preble No. CA2015-12-023, 2016-Ohio-8456, ¶ 38 and *State v. Cruz,* 12th Dist. Preble No. CA2013-10-008, 2014-Ohio-4280, ¶ 18. "Regarding the reliability of a canine search, the United States Supreme Court has held that '[i]f a bona fide organization has certified a dog after testing his reliability in a controlled setting, a court can presume (subject to any conflicting evidence offered) that the dog's alert provides probable cause to search.'" *Id.,* quoting *Florida v. Harris,* 568 U.S. 237, 246-247, 113 S.Ct. 1050 (2013).

{¶28} Here, Officer Welker testified that he and Rico are a certified K-9 unit, and that they have undergone extensive training, certification, and recertification through the State of Ohio. (*See* Jan. 8-9, 2020, Tr., Vol. I, at 90-91). Other than innuendo, Womack offers no conflicting evidence putting Rico's training and reliability in doubt despite having Rico's "deployment and use history." (Appellee's Brief at 9). Without evidence to the contrary, we can presume that Rico's positive alert provided Officer Welker probable cause to believe that drugs

would be found in Womack's vehicle and, as such, the subsequent search of the vehicle was lawful. *See Fritz* at ¶ 31. Accordingly, we cannot conclude that a motion to suppress evidence based on an argument challenging Rico's training and reliability would have had a reasonable probability of success. Thus, Womack's trial counsel was not ineffective for failing to file a motion to suppress evidence challenging Rico's training and reliability.

{¶29} Based on the foregoing, we conclude that Womack's trial counsel was not ineffective and, therefore, her assignment of error is overruled.

{¶30} Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment Affirmed*

**WILLAMOWSKI, P.J. and SHAW, J., concur.**

**/jlr**